DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF NEVADA.

## JANUARY TERM, 1874.

---

## Ex Parte D. L. BLANCHARD.

GIFT CONCERT ACT UNCONSTITUTIONAL. The act of March 3, 1861, to aid the Nevada Benevolent Association in providing means to erect an insane asylum (Stats. 1871, 110,) in so far as it authorized a lottery or allowed the sale of lottery tickets in this State, was unconstitutional.

ACT AUTHORIZING LOTTERY—CONSTRUCTION OF STATUTES EXCLUSIVELY A JUDICIAL POWER. Where a statute provided for gift concerts and distribution of prizes among ticket holders by raffle, and specially provided that "nothing in this act contained shall be construed as authorizing a lottery in this State or as allowing the sale of lottery tickets contrary to the provisions of the constitution" (Stats. 1871, 110): Held, that the construction of such act was for the courts alone and that the attempted exercise of this power by the legislature was an unconstitutional assumption of the functions of the judiciary.

LOTTERIES PUBLIC NUISANCES. The English statute of 10 and 11 W. III. c. 17, declaring lotteries to be public nuisances, constitutes a part of the common law of the United States, and was so understood by the framers of our constitution when they provided that "no lottery shall be authorized by this State."

GIFT CONCERT TICKETS LOTTERY TICKETS. Where a person was convicted of selling lottery tickets contrary to the act of March 7, 1873, prohibiting lotteries (Stats. 1873, 186); and the fact appeared to be that he had sold tickets to a gift concert under the act of March 3, 1871, in aid of the Nevada Benevolent Association (Stats. 1871, 110): Held, on habeas corpus, that the act of 1871, being unconstitutional as sanctioning a lottery, afforded no protection.

HABEAS CORPUS before the Supreme Court. The petitioner set forth that he with others had organized an association for the purpose of giving concerts to be held in the State of Nevada under authority of "An act to aid the Nevada Benevolent Association in providing means to erect an insane asylum," approved March 3, 1871; that many tickets were issued and sold by the said association, each ticket entitling the holder to admission to such concerts and to a chance of drawing a certain sum of money, said association having prizes aggregating $265,000, and ranging in value from $5, to $50,000; that the association issued twenty thousand and seventy-one tickets and sold nineteen thousand thereof prior to March 3, 1873; that said concerts were to be held and prizes drawn in Virginia City in February, 1873, but as all the tickets were not sold by that time the concerts and drawing were postponed till March 4, 1874; that on January 2, 1874, the petitioner, being managing agent of the association, sold tickets; and that in consequence thereof he was illegally restrained of his liberty at Virginia City by the sheriff of Storey County.

*Lewis & Deal*, for Petitioner.

I. The State having encouraged this thing, taken two thousand dollars of its money, accepted its bond, the law should be construed, if possible, so as not to include it.

II. There can be no presumption that the legislature intended to reach this lottery by the act of 1873. The presumption is the other way. The act of 1873 does not repeal the act of 1871 in terms, and this is some evidence in itself that the legislature did not intend to reach persons engaged in this lottery. This conclusion is irresistible when it is borne in mind that the legislature by the former act expressly declared that this gift enterprise was not a lottery. There was then no intention to make the last act cover the lottery

organized under the former act or persons acting thereunder, and therefore no one can be punished who did so act under it.

III. At common law gaming of itself was not unlawful (and this may be admitted to be gaming.) *Quarrier* v. *Colston*, 1 Phillips, 147; Story on Contracts, Sec. 565. In *Wardell* v. *Wait*, Kent held subsequent act not applicable to a lottery already organized. 7 Johns. 440; 3 Kent, Sec. 277. Gaming was only unlawful at common law when practised in gaming houses, and then only because such houses were deemed nuisances, or because they had a tendency to gather together idlers, or to occasion breaches of the peace, or to corrupt morals, or because contrary to public policy. But none of the reasons apply to this case because this is not carried on in a gaming house; it has no tendency to gather together idlers, nor to occasion breaches of the peace, nor to corrupt public morals. Such enterprises are allowed by statutes in some states—in Massachusetts, for example, and other states.

IV. There was no statute prohibiting it at the time this gift concert was organized. All its contracts were legal therefore, unless the constitution affected it. But what is the character of the constitutional provision? It does not prohibit lotteries, but only restricts the power of the legislature respecting them. Const. Art. IV., Sec. 24. If it had been considered illegal or contrary to public policy or detrimental to the public, the framers of the constitution would themselves have prohibited it. But knowing that lotteries were legal, they simply restricted legislative power as to them. The conclusion is irresistible that they simply intended to keep the State out of lotteries, or to prevent the State from authorizing them. If such be the case, the constitution itself did not render this lottery illegal, and it could only become so by legislative action. Notwithstanding the constitution then, the lottery was legal. The conclusion is

that the contracts entered into to draw the lottery and distribute prizes were legal contracts, and the Penal Act of 1873 destroys that contract.

By the Court, BELKNAP, J.:

The "Nevada Benevolent Association" was authorized by an act of the legislature, approved March 3, 1871, to give not exceeding three public entertainments or gift concerts, and to sell tickets of admission to the same entitling the holder to participate in a distribution of awards "by raffle or other scheme of like character." The petitioner is the managing agent of the association. He has been arrested and is in custody for selling lottery tickets, contrary to the provisions of the statute, approved March 7, 1873, entitled "An act to prohibit lotteries." The tickets sold were those of the "Nevada Benevolent Association."

It is clear that the act of March 3, 1871, sanctions a lottery. The character of the scheme is in no wise changed by the charitable purpose expressed in its title, nor by calling the drawings "entertainments or gift concerts." The fifth section of the act declares that "nothing in this act contained shall be construed as authorizing a lottery in this State, or as allowing the sale of lottery tickets contrary to the provisions of the constitution."

The State government is divided by the organic law into executive, legislative and judicial departments, and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others except in cases expressly directed or permitted. Const. Art. III. The construction to be placed upon this act must be determined by the court alone. The attempted exercise of this power by the legislature was an assumption of the functions of the judiciary, and must be disregarded.

By statute 10 and 11, W. III. c. 17, all lotteries are declared to be public nuisances. 4 Bl. Com. 168. This statute remained in force in England at the time of the declaration of American Independence, and being applicable to our situation, constitutes a part of the common law of the United States. From the language employed in the constitution, it is evident that this was the understanding of its framers. In the restriction upon the power of the legislature, it is not said that lotteries shall be prohibited, but that "no lottery shall be authorized by this State." This constitutional clause considered in the light of the common law implies that lotteries could be lawfully created by authority of the legislature only. But this authority was withheld, and the act of March 3, 1871, being in direct violation of the prohibition, is unconstitutional. Since, then, this lottery is unauthorized by common law or valid statute, it follows that the objection urged that the act of 1873 impairs the obligation of contracts is without force.

We are of opinion that the act to prohibit lotteries took effect, as by the terms of its tenth section it is declared it shall, "from and after the first day of January, one thousand eight hundred and seventy-four," and is applicable to tickets sold under the act of the legislature of March 3, 1871, entitled "An act to aid the Nevada Benevolent Association in providing means to erect an insane asylum."

The petitioner is remanded to the custody whence he came.

WHITMAN, C. J., did not participate in the foregoing decision.