[No. 694.]

## WILLIAM EVANS, RESPONDENT, v. JOSEPH COOK, ET AL., APPELLANTS.

JUDGMENT, ENTRY OF.—Where a defendant is severally liable a separate judgment against him may be entered upon his default, leaving the action to proceed against his co-defendants.

JUDGMENT BY DEFAULT—EXCUSABLE NEGLECT.—Cook signed the undertaking upon which he is sued, upon the representation of Hanley that the sole consideration of the note declared upon in the attachment suit was a gambling debt, that he (H.) could and would defend the action on that ground; that H., instead of defending the action, and by collusion with the plaintiff for the purpose of cheating and defrauding C., suffered a judgment to be taken against him; that H. frequently represented to C. that the matter was settled and that he need not trouble himself about it, etc.; that he was actually induced by these representations, made by procurement of the plaintiff, to neglect to file his answer in time. *Held*, that this was excusable neglect.

DEFENSE TO A PROMISSORY NOTE.—It is a good defense to an action on a promissory note to show that the consideration for which it was given was money won by gambling.

ADOPTION OF ENGLISH STATUTES.—English statutes in force at the date of the declaration of American independence and applicable to our situation are a part of the common law which we have adopted (affirming *Ex parte Blanchard*, 9 Nev. 105).

"GAMING" AND "GAMBLING."—These words are defined and treated as synonymous.

APPEAL from the District Court of the Seventh Judicial District, Lincoln County.

The facts are stated in the opinion.

*J. C. Foster*, for Appellant.

I. The power of the court to set aside defaults should be liberally exercised, so that cases may be disposed of upon their merits; mere technicalities should be avoided when

they affect substantial rights.  In this case, fraud and collusion are relied upon and fully set forth in the affidavit and answer.  When such is the defense, the court should open the default and permit the defendant to set up his defense. (*Rowland* v. *Kreyenhagen*, 18 Cal. 455; *Howe* v. *Independence Co.*, 29 Cal. 72; *McKinley* v. *Tuttle*, 34 Cal. 235; *Howe* v. *Coldren*, 4 Nev. 173; 5 Nev. 386.)

II.  The summons having been served on all the defendants, and a default against Hanley, no judgment can be entered against one alone.  (*Mayenbaum* v. *Murphy*, 5 Nev. 386; *Bullion M. Co.* v. *Crœsus Co.*, 3 Nev. 337; *Keller* v. *Blasdel*, 1 Nev. 493; *Keller* v. *Blasdel*, 2 Nev. 163; 1 Chit. Pl. 44; *Stearns* v. *Aguire*, 7 Cal. 447; *Stearns* v. *Aguire*, 6 Cal. 176; *Lewis* v. *Clarkin*, 18 Cal. 402; *Claflin* v. *Butterly*, 5 Duer, 327; *Brunskill* v. *James*, 1 Kern. 294; *Slayter* v. *Smith*, 2 Bos: 624.)

III.  All the states in the Union (with the exception of California) have held gaming contracts illegal, contrary to the principles of morality and against sound policy. (*Perkins* v. *Eaton*, 3 N. H. 155; *Hoit* v. *Hodge*, 6 N. H. 104; *Clark* v. *Gibson*, 12 N. H. 387; *Wheeler* v. *Spencer*, 15 Conn. 30; *Laval* v. *Meyers*, 1 Bail. S. C. 486; *Lewis* v. *Littlefield*, 3 Shep. 233; *Edgall* v. *McLaughlin*, 6 Whar. 176; *Wilkinson* v. *Tousley*, 16 Minn. 299.)

*A. B. Hunt*, for Respondent.

I.  It was not an abuse of discretion to refuse to open the default upon the showing made.  (*Woodward* v. *Backus*, 20 Cal. 137; *Harper* v. *Mallory*, 4 Nev. 449; *Bailey* v. *Tuaffe*, 29 Cal. 424.)

II.  Respondent had the right to hold either one, any or all of the defendants, for the amount mentioned in the undertaking, as each one had made himself severally liable for the whole; and a judgment may be given against one or more of several defendants.

III.  There is no statute in this state forbidding wagers; and, by an act of the legislature, the common law has become a part of the jurisprudence of this state.  (Comp. Laws, sec. 1.)

IV. Wagers are recoverable at common law when not opposed to public policy, and when they do not injuriously affect the interests of third parties. (*Johnson* v. *Fall,* 6 Cal. 359; *Johnson* v. *Russell,* 37 Cal. 640; *Jonas Ball* v. *Gilbert,* 12 Met. 397; *Clark* v. *Gibson,* 12 N. H. 386; *Campbell* v. *Richardson,* 10 John. 406; *Bunn* v. *Riker,* 4 John. 426; *Morgan* v. *Pettit,* 3 Scam. 529; *Haskett* v. *Wootan,* 1 N. & McC. 180; *Dennison* v. *Strother,* 1 Tex. 89; *Kirkwood* v. *Brown,* 8 Tex. 10; *Campbell* v. *Reeves,* 14 Tex. 8; *Carson* v. *Rambert,* 2 Bay. S. C. 560; *Scott* v. *Duffy,* 2 Har. 18; *Wast* v. *McIntyre,* Wright, 356; *Wheeler* v. *Friend,* 22 Tex. 683; *Trenton L. and F. Ins. Co.* v. *Johnson,* 4 Zab. 576–584; *Mulford* v. *Bowen,* 4 Hal. 315; *Dewes* v. *Miller,* 5 Har. 347; *Smith* v. *Smith,* 21 Ill. 244.)

V. The high and exalted morality assumed by the supreme court of Minnesota, we think is fully and completely answered in the case of *Yates* v. *Foot,* 12 John. 1.

By the Court, Beatty, J.:

The complaint in this action shows that in October, 1873, the plaintiff caused an attachment to be issued in an action against the defendant Hanley; that to prevent the levy of that attachment, the defendants Cook and Polleys executed the statutory undertaking by which they bound themselves jointly and severally to pay any judgment that might be recovered by the plaintiff; that the plaintiff recovered judgment against Hanley in May, 1874, and issued execution, which wa returned wholly unsatisfied; that he demanded payment of the sureties, which was refused, wherefore suit is brought. The summons was served on each of the defendants on the day the suit was commenced, June 12, 1874. Polleys demurred; the others made default. After entry of his default, but before judgment, the appellant, Cook, moved upon affidavit and verified answer, to have his default set aside, and for leave to defend. His motion was denied, and the court, upon an application for judgment against him alone, heard testimony and rendered judgment against him for the amount sued for, seven hundred and four dollars and seventy-five cents, leaving the action pending against his

co-defendants. He now appeals from this judgment and the order overruling his motion for leave to defend, upon two assignments of error:

First. That the judgment against him alone, leaving the action still pending against his co-defendants, is void.

Second. That the court erred in overruling his motion for leave to answer and defend.

The first proposition does not appear to be maintainable. The defendants were severally, as well as jointly, liable. The plaintiff might have sued Cook alone and had judgment against him; and section 149 of the practice act provides that "In an action against several defendants the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others whenever a several judgment would be proper." This section of our practice act corresponds with the third subdivision of section 274 of the New York code. I have not found any case in which that provision has been expressly held to sanction the practice pursued in this case. But a decision is reported in 11 Howard, 198, where a precisely similar judgment was set aside upon the ground that the liability of the defendants was not several, but joint only; the clear implication being, that if the liability had been several the judgment would have been upheld. It seems, indeed, to be the plain construction of the law, that where a defendant is severally liable, a separate judgment against him may be entered upon his default, leaving the action to proceed against his co-defendants. And where a defendant by his undertaking has made himself liable to a separate suit, I cannot see that it greatly concerns him ordinarily, whether the plaintiff elect to proceed against him alone before or after commencing his action.

The case of *Stearns* v. *Aguirre* (6 Cal. 176), was virtually overruled in *Lewis* v. *Clarkin* (18 Cal. 399).

But the second point made by the appellant seems to be better sustained. His default was entered on June 25. On July 7 he gave notice of his motion to set it aside and for leave to defend, and filed and served his affidavit and the verified answer which he proposed to make if allowed. No

judgment had been rendered at that time, and none was rendered until the 7th of September following. The plaintiff presented no counter affidavits; and so, for the purposes of the motion, everything disclosed by the affidavit and verified answer of the defendent must be taken for true. They show substantially this state of facts: That Cook signed the undertaking upon which he is sued, upon the representation of Hanley that the sole consideration of the note declared upon in the attachment suit was a gambling debt, of which the plaintiff had notice before assignment by the payee; that he, Hanley, could and would defend the action upon that ground; that this representation as to the consideration of the note, and the knowledge of the plaintiff, was in fact true; that Hanley, instead of defending the action, withdrew his demurrer, and by collusion with the plaintiff, for the purpose of cheating and defrauding Cook, suffered a judgment to be taken against him; that Hanley was totally insolvent, and the purpose of the collusive arrangement was to fasten a liability upon Cook for an illegal demand; that Hanley frequently represented to him that the matter was settled and that he need not trouble himself about it; that when this action was commenced and appellant spoke to Hanley on the subject, he, still acting in collusion with the plaintiff, told appellant not to take any trouble or go to any expense about the suit, as he had an attorney retained who would answer for him; that he was actually induced by these representations, made by procurement of the plaintiff, to neglect to file his answer in time.

I think this shows a sufficient excuse for such neglect. It may be true, as suggested by respondent, that Hanley, by his previous misrepresentations as to the defense and settlement of the attachment suit, had shown himself unworthy of belief, and that Cook ought not to have relied on his promises to see to the defense of this action; but this suggestion should not avail the party who, by his silence, confesses himself *particeps criminis* in the deception.

In the case of *Harper* v. *Mallory* (4 Nev. 448), the court went quite as far as I should be willing to follow, in denying leave to defend after default. But that case was essen-

tially different from this. The plaintiff there had not by any fraud or collusion induced the defendant not to answer in time. That fact alone being shown in this case, should have entitled the defendant to leave to defend the action if his proposed answer disclosed a meritorious defense, and he had been guilty of no inexcusable laches. I think there was no such laches. The motion was promptly made and before judgment, and apparently before the plaintiff was prepared to move for judgment. No damage nor any serious delay could have been caused by sustaining it.

It is contended, however, that although it might have been proper for the court below to allow a defense, this court ought not to reverse its order unless we can say that it involved an abuse of discretion. This I understand to be the rule where the facts are disputed; but it does not apply where they are entirely undisputed, as in this case. The question to be decided here is, as in the district court, purely a question of law, and if it appears to have been erroneously decided it is our duty to reverse the decision.

I think it was erroneously decided if the proposed answer disclosed a meritorious defense, which is the only question remaining to be considered.

As to this question, it is not disputed, and, I presume, not doubted, that if Hanley had a good defense to the attachment suit, and, by collusion with the plaintiff, neglected to make his defense for the purpose of defrauding his sureties, these facts would constitute a good defense for them in a suit on their undertaking. (See authorities collected and discussed in *Douglass* v. *Howland,* 24 Wend. 35; and see *Riddle* v. *Baker,* 13 Cal. 306.)

Is it, then, a good defense to an action on a promissory note to show that the consideration for which it was given was money won by gambling?

As to whether contracts of wager in general were valid at common law, there is some conflict of opinion disclosed by the American cases, but the weight of authority is so decidedly in favor of their validity that I think there ought never to have been a doubt of it. The ancient common law, however, was altered in respect to this matter by numerous English statutes, and it has been held by this court that English stat-

utes in force at the date of the declaration of American independence and applicable to our situation, are a part of the common law which we have adopted. (*Ex parte Blanchard*, 9 Nev. 105.) I should have felt some hesitation in coming to this conclusion if the matter had been *res integra;* but I think that after having been once so determined the point should not be unsettled except for very weighty and conclusive reasons; and none such have been suggested in this case.

It follows, therefore, that we have adopted the common law upon the subject of wagers as altered by the statute of 9 Anne, c. 14, by the first section of which it is enacted "that all notes, bills, bonds * * * given * * * by any person or persons whatsoever, where the whole or any part of the consideration * * * shall be for any money or other valuable thing whatsoever, won by gaming, * * * shall be utterly void, frustrate, and of none effect, to all intents and purposes whatsoever," etc. (4 Bac. Ab. 456.)

This, then, is the law of this state, except so far as it may be controlled by our own statutes; and there is nothing that I am aware of in the laws of Nevada to limit its operation except for the protection of a *bona fide* assignee for value of a note or bond, which the statute of Anne makes absolutely void.

Taking the answer of Cook for true, the plaintiff here is not a *bona fide* assignee for value of the note sued on, and a defense which would have been good against the payee is good against him.

The word used in the statute of Anne is "gaming," and that used in Cook's answer and affidavit is "gambling;" but they are defined and treated as synonymous. (See Burrill's and Wharton's Law Dictionaries.)

An objection is made to the answer that it does not show what particular sort of gambling the money in question was won at. But this is an objection, if valid, to be taken by special demurrer to the answer, and is no reason for denying the right to answer.

The judgment should be reversed, and the appellant allowed to file his answer and defend the action.

It is so ordered.