### PETER BERLET V. EDWIN D. WEARY.

FILED JANUARY 8, 1903.  No. 12,480.

Commissioner's opinion, Department No. 1.

1. **Summons: MEMBER OF THE LEGISLATURE.** The law of this state makes no distinction as to the service of summons between members of the legislature and other persons.

2. ——: ——. A member of the legislature may, in a proper case, be served with summons while at the seat of government for the purpose of attending the legislative session.

ERROR from the district court for Lancaster county. Action on account for goods sold and delivered. The defendant pleaded, *inter alia*, his privilege and immunity from civil process, as a member of the legislature of the state. Tried below before FROST, J. Judgment for plaintiff. *Affirmed.*

*Jefferson H. Broady, Paul F. Clark* and *Charles S. Allen*, for plaintiff in error.

*Love & Frampton, contra.*

LOBINGIER, C.

This action was commenced in the district court for Lancaster county, December 31, 1900, on an account for merchandise alleged to have been sold by pl; ' .tiff to defendant. The latter filed objections to the jurisdiction and a motion to quash the service, alleging that he was a member of the Nebraska state senate, which convened on January 1, 1901, and that he was in Lancaster county on the day previous for the sole purpose of attending the legislative session. The motion and objections were overruled and defendant then answered, again claiming privilege from service in Lancaster county, admitting the purchase of most of the merchandise, but not from plaintiff, alleging that the items charged in the account were "unreasonable, unjust and exorbitantly high" and that part

Syllabus by court; catch-words by editor.

of the goods were damaged when received. The answer also contained a general denial. There was a trial to a jury which found for the plaintiff, but the only evidence contained in the bill of exceptions relates to the matters set forth in the objections to jurisdiction and motion to quash, and the petition in error from the judgment rendered on the verdict is restricted in its assignments to the same matters.

Defendant contends that he was not voluntarily in Lancaster county on the day when he was served, but was there in pursuance of official duty; that his presence might have been compelled by a call of the house; and that while he might have been served at his home in Nemaha county, the service in Lancaster county was unauthorized and invalid. This contention calls for an investigation as to the extent of a legislator's immunity from judicial process. It is conceded that there are no constitutional or statutory provisions in this state which exempt a legislator from the service of civil process, and the exemption here claimed, if it exists at all, must be derived from the common law. We are first to inquire, then, what was the common-law rule.

From time immemorial members of parliament were privileged from arrest during the sessions of that body and for a reasonable period before and after, so as to permit them to attend and return home. The privilege appears to have originated in the necessity of maintaining the independence of the legislature as against the aggressions of the crown and of preventing the coercion of members by the use or abuse of criminal process. The privilege was not, however, restricted to such process, but extended to all cases where the member's person might be taken into custody. So long, therefore, as imprisonment for debt was in vogue, the peers and commons were exempt from this also, and from such of the civil writs as were executed by seizing and confining the person of the defendant. Thus, as late as 1841, it was held to be irregular to issue a *capias ad satisfaciendum* (which was executed by imprisoning the

defendant until the debt and costs were paid) against a member of the house of commons in an action of assumpsit. *Cassidy v. Stewart,* 2 M. & G. [Eng.], 437.

The freedom of members from process of this kind, whether criminal or civil, rests upon the highest grounds of public policy. As was said by Lord Denman, C. J., in *Stockdale v. Hansard,* 9 Ad. & El. [Eng.], 1, 114: "The proceedings of parliament would be liable to continual interruption at the pleasure of individuals, if every one who claimed to be a creditor could restrain the liberty of the members." Another ground, as pointed out by a learned constitutional historian, is "the supreme necessity of attending to the business of parliament, the king's highest court." Stubbs, Constitutional History of England, vol. 3, sec. 452, p. 512. But this immunity and the reasons therefor appear to have existed only as to process which required the detention of the person. After a diligent search we have been unable to find a single English case which decides that a member of parliament or other legislative officer is exempt from the service of a mere summons at any time. That such exemption was sometimes claimed by the members themselves is true, but we find no instance where it was recognized and enforced by the courts. And as was said by the eminent chief justice in the case last cited (p. 114): "When this privilege was strained to the intolerable length of preventing the service of legal process, or the progress of a cause once commenced against any member during the sitting of parliament, or of threatening any who should commit the smallest trespass upon a member's land, though in assertion of a clear right, as breakers of the privileges of parliament, these monstrous abuses might have called for the interference of the law, and compelled the courts of justice to take a part." Mr. Justice Wylie, in his learned and exhaustive opinion in *Merrick v. Giddings,* McArthur & Mackey [D. C.], 55, mentions two cases (*Doune v. Welsh* and *Ryver v. Cosins*) in the reign of Edward IV. (1461-1483), where "it was held that the privilege from arrest during the session of

parliament did not protect him [the member] from being impleaded, but only that he should not be arrested." In *Benyon v. Evelyn*, Orlando Bridgman's Judgments, 324, decided about the middle of the seventeenth century, it was declared to be "lawful to sue out an original writ against a member of the house of commons although parliament is sitting." It is true that some of the text-writers appear to announce a different rule as applicable to this period. In 4 Coke's Institutes, 24, there is a passage where the author, in speaking of a member of parliament, says "the serving of the citation did not arrest or restrain his body, and the same privilege holdeth in case of subpœna." This passage, however, has been much criticised and declared to be unwarranted from the record on which the author relies. "The truth is," observed Chief Justice Bridgman in *Benyon v. Evelyn*, Bridgman's Judgments, 324, "that Lord Coke's treatise of the jurisdiction of parliament is a posthumous work; and though I shall attribute as much to his learning in the law as to any sages in the law whatsoever, yet there not being that freedom in former times of having copies of the records at large as hath been since, when he comes to cite them he is guided by abstracts, which occasions miserable mistakes, and by the *modus tenendi Parliamentum*, which, as to the time of making it, was most certainly a counterfeit piece. So that there are a multitude of errors in his chapter concerning parliaments, and in particular both those records are grossly mistaken." See also Hatsell, Precedents, p. 6; *Merrick v. Giddings*, McArthur & Mackey [D. C.], 55, 59. So in Stubbs, Constitutional History of England, vol. 3, sec. 452 *et seq.*, the author speaks of members of parliament as privileged "from being impleaded in civil suits, from being summoned by subpœna or to serve on juries," etc.; but, while he mentions many cases of exemption from criminal process, he refers to no instance of immunity from the mere service of civil process, and it is evident that he is here speaking of privileges claimed by the members, rather than those recognized and enforced by the courts.

But whatever may have been the law at this time and whatever the claims of the members, parliament itself at an early period undertook to restrict the exemption to process which restrained the liberty of the member. In 1649 the house of commons ordered that in case of a legal proceeding against a member he should receive written notice of its pendency and that then "the member is enjoined to give appearance and proceed as other defendants in case of like suits or actions ought to do, or in default thereof, both their estates and persons shall be liable to any proceedings in law or equity as other members of the Commonwealth." See Journal of House of Commons * quoted in *Hoppin v. Jenckes,* 8 R. I., 453, 457. In 1700 parliament passed an act providing for the commencement of actions and the issue and service of process against members of parliament "at any time from and immediately after the dissolution or prorogation of any parliament, until a new parliament shall meet, or the same be reassembled and from and immediately after any adjournment of both houses of parliament for above the space of fourteen days, until both houses shall meet or reassemble."† In 1769 a statute was enacted which provided that: "Any person or persons shall and may, at any time, commence and prosecute any action or suit in any court of record, or court of equity, or of admiralty, and in all causes matrimonial and testamentary, in any court having cognizance of causes matrimonial and testamentary, against any peer or lord of parliament of Great Britain, or against any of the knights, citizens, and burgesses, and the commissioners for shires and burghs of the house of commons of Great Britain for the time being, or against their or any of their menial or any other servants, or any other person entitled to the privilege of parliament of Great Britain; and no such action, suit, or any other process or proceeding thereupon, shall at any time be impeached, stayed, or delayed, by or under colour or pretence of any privilege of parliament."‡

---

* April 14.    ‡ 10 George III., p. 359, ch. 50.
† 13 William III., ch. 3, sec. 1.

Thus the law stood at the separation of the colonies from the mother country. If, as has been declared in some jurisdictions, the English statutes enacted prior to the separation are to be treated as part of the common law (6 Am. & Eng. Ency. Law [2d ed.], p. 279; Sedgwick, Statutory Construction, 14; *Ex parte Blanchard,* 9 Nev., 101), it is plain that the common law of the United States affords no immunity to legislators from the service of ordinary civil process. This, at least, appears to be recognized in the authorities.

In *Peters v. League,* 13 Md., 58, where a member of the Baltimore city council claimed exemption from the service of an attachment while in the discharge of his duties, the court said (p. 64) : "It is worthy of remark, that peers and members of parliament were liable at common law to be sued though they could not be arrested on writs of *capias.* Here the process was an attachment, with a summons to the party as garnishee; therefore the supposed analogy between members of the Baltimore city councils and of parliament would not aid the appellant."

Judge Cooley, in his Constitutional Limitations [5th ed.], p. 161,* says: "By common parliamentary law, the members of the legislature are privileged from arrest on civil process during the session of that body, and for a reasonable time before and after, to enable them to go to and return from the same. By the constitutions of some of the states this privilege has been enlarged, so as to exempt the persons of legislators from any service of civil process."

It was the view of this eminent commentator, therefore, that the common-law privilege needed to be "enlarged" before it could include exemption from the service of ordinary civil process. Among the states in which the privilege was thus "enlarged" were Connecticut, South Carolina and Virginia, and under these remedial statutes were decided the cases of *King v. Coit,* 4 Day [Conn.], 129; *Tillinghast v. Carr,* 4 McCord Law [S. Car.], *152; *M'Pherson v. Nesmith,* 3 Gratt. [Va.], 227, though in the

---

* 6th ed., p. 160.

last named, it was held that an exemption from all other process whatsoever would not prevent the issue of the writ, but merely suspend the service during the privilege. Under the constitutions of most of the other states, as well as of the federal government, however, the common-law rule as parliament had left it by the statute of 1769, was re-enacted. See 1 Stimson, American Statute Law, p. 68. From the earliest constitutions of the older states it has been carried forward until it has reached our own, where it appears as section 12 of article 3. And in *State v. Elder,* 31 Nebr., 169, 184, this court, in construing and commenting on that clause, declares that "the provision of the constitution is merely a reenactment of the common law."

We are cited to *Bolton v. Martin,* 1 Dall. [U. S.], 296, where the court of common pleas of Philadelphia county held that a member of the convention called for the purpose of ratifying the federal constitution, was exempt from the service of a summons during the session of that body. The opinion does not profess to follow any English case, but relies upon a passage in Blackstone's Commentaries, the status of which is thus explained in the instructive opinion heretofore quoted in *Merrick v. Giddings,* Mac-Arthur & Mackey [D. C.], 55, 63: "At that time seven, perhaps eight, editions of Blackstone's Commentaries had been issued. The two first editions were issued prior to the year 1770; the first was issued in 1765 from the Clarendon Press, Oxford. So, also, was the second. Both of these contain the passage as cited by Judge Shippen and quoted above; but after the passage by parliament of the act of 10th of George III., ch. 50, in the year 1770, Mr. Justice Blackstone with his own hand struck out that passage, and changed its reading to the present form, which is as follows: 'Neither can any member of either house be arrested and taken into custody, unless for some indictable offense, without a breach of the privilege of parliament,' omitting the words, 'or served with any process,' on which Chief Justice Shippen relied for his decision in *Bolton v. Martin,* eighteen years after the change had been made, and

12

after numerous large editions of the work, with the passage corrected, had been given to the world. Nor was this the whole of the change made by the eminent commentator at that time, for immediately succeeding the sentence on which we have been remarking, he inserted an additional paragraph which is too long to quote. * * * It is but a reasonable exercise of charity, however, to presume that Chief Justice Shippen, in making up his decision in that case, relied upon a copy of one of the early editions of the Commentaries which he had probably studied in his youth and believed to be as unchanged and unchangeable as the Koran."

We are also referred to a statement in the opinion in *Geyer v. Irwin*, 4 Dall. [U. S.], 107, that "a member of the general assembly is, undoubtedly, privileged from arrest, summons, citation or other civil process, during his attendance on the public business confided to him." Upon examination, it will be found that this passage is a mere *dictum*, for no such question was presented in the case. A legislator's attorney had confessed judgment in an action pending in the former's home county, and the supreme court of Pennsylvania, on appeal, said that the action could not have been forced to trial in the member's absence, but that his attorney, by confessing judgment, had waived the privilege. No other point was involved in the case. The court nowhere referred to *Bolton v. Martin*, 1 Dall. [U. S.], 296, and even the *dictum* that the member's absence entitled him as a matter of right to a continuance, was disapproved in *Nones v. Edsall*, 1 Wall. Jr. [U. S. C. C.], 189. The doctrine of *Bolton v. Martin*, above referred to, was, however, applied to members of the legislature in the subsequent nisi-prius cases of *Gray v. Sill*, 13 Weekly Notes of Cases, 59, and *Ross v. Brown*, 7 C. C. Rep. [Pa.], 142.

In 1840, the territorial supreme court of Wisconsin decided, in *Doty v. Strong*, 1 Pin., 84, that the immunity from arrest guaranteed to members of congress by the federal constitution included also exemption from

the service of ordinary civil process, and applied to a delegate from that territory. The writer of the opinion states that the only "authority" which he has been able to find on the subject, is *Geyer v. Irwin,* 4 Dall. [U. S.], 107, which, as we have seen, did not involve or decide the question at all. There was a dissenting opinion by the chief justice. The following year, in *Anderson v. Rountree,* 1 Pin., 115, the same court announced the same construction of the territorial statute which exempted members of the legislature from arrest. The opinion is written by the same judge (Miller) as in *Doty v. Strong,* and in the interval he seems to have found a reference to *Bolton v. Martin,* 1 Dall. [U. S.], 296, which, as we have seen, was based upon a misapprehension of Blackstone's Commentaries. Judge Miller does not appear even to have seen a report of the case, but merely to have read a reference to it in Story's Commentaries on the Constitution. The construction of the word "arrest," so as to include the service of summons, seems to be peculiar to this territorial court and to be without support elsewhere. Judge Cooley (Constitutional Limitations [5th ed.], p. 161, note) says that exemption from arrest is not violated by the service of citations or declarations in civil cases. That the construction was a strained and unnatural one, not likely to endure the test of time, seems to have been recognized even then in Wisconsin; for when the state was admitted, seven years later, the framers of its constitution appear to have thought it necessary, in order to make it the law of that jurisdiction, to insert in that instrument an express provision that members of the legislature should not "be subject to any civil process during the session." Constitution, Wisconsin, art. 4, sec. 15. In *Miner v. Markham,* 28 Fed. Rep., 387, the circuit court sitting in Wisconsin decided that a member of congress was privileged from service of a summons while on the way to the seat of government. The court conceded that the cases were not harmonious, but adopted the state court's construction, which had existed from territorial

times, and which, as we have just seen, was embodied in the first constitution.

The foregoing are all of the cases which we have been able to find, either from the aid of the briefs of counsel or otherwise, which lend any support to the doctrine that a legislator is privileged from the service of a summons. It will be seen that there is among them only one court (and that a territorial one) of last resort which has actually so decided, that its conclusion was reached with little or no opportunity for investigation of the authorities, and that its construction of the word "arrest" is unprecedented and unsound. On the other hand, the doctrine that a member of the legislature, like other citizens, is amenable to the service of a summons, finds ample support in the authorities.

In *Catlett v. Morton,* 4 Litt. [Ky.], 122, the court held that despite the constitutional guaranty of privilege from arrest, members of the legislature "are subject to the execution of any other process, as other citizens are." This case was decided nearly eighteen years before the Wisconsin cases above referred to, and though directly opposed to their conclusions, is not noticed in either of them. The doctrine was reaffirmed in *Johnson v. Offutt,* 4 Met. [Ky.], 19, though there had meanwhile been a change in the statute.

In *Gentry v. Griffith,* 27 Tex., 461, a similar constitutional guaranty was construed with similar conclusions, and the court used the following language, which might well be applied to the reasoning of the Wisconsin case: "It would be difficult to distort any of these definitions so as to make them applicable to the simple service of citation, or giving notice to answer in a civil action."

*Rhodes v. Walsh,* 55 Minn., 542, 23 L. R. A., 632, is also an instructive case, where the court, in an able opinion, holds that there is no exemption from ordinary process for members of the legislature.

The Wisconsin decisions as to the immunity of members of congress also seem to stand alone. The contrary

was held in *Merrick v. Giddings,* McArthur & Mackey
[D. C.], 55, and *Howard v. Citizens' Bank & Trust Co.,* 12
App. Cases [D. C.], 222, and exhaustive opinions are writ-
ten in both. In *Bartlett v. Blair,* 68 N. H., 232, the court,
while declining to construe the federal constitution in
advance of an adjudication by the supreme court, refused
to quash the service of a writ at the residence of a member
of congress who was absent in attendance upon a session
of that body.

But if the weight of authority were not so pronounced
as it thus appears to be and we felt at liberty to adopt the
rule announced in the Pennsylvania and Wisconsin cases,
we could not even then find sufficient support for plaintiff
in error's contention that, though amenable to civil pro-
cess, it could only be served upon him in his home county.
None of the cases relied upon by him and none of those
above reviewed so hold; nor do they, in our view, lend any
support to his theory of the case. So far as they touch
the question at all, they decide that the legislator is abso-
lutely privileged from service,—not that he is privileged
in one place and amenable in another. Thus in *Gray v.
Sill,* 13 Weekly Notes of Cases, 59, the member was served
while at home during the recess of the legislature. Under
the rule contended for by plaintiff in error this would
have been a valid service; but it was not so held. We see
no room for any middle ground between the Pennsyl-
vania and Wisconsin cases on the one hand and the au-
thorities elsewhere on the other. Either the member is
exempt from service or he is not. And if he is not exempt,
he is amenable to the provisions of section 60 of the Code,
which, as always construed, authorizes him to be sum-
moned in any county where he may be found. Moreover,
we think that not only do the authorities relied on by
plaintiff in error fail to assist him in his precise conten-
tion, but that also some of the authorities above referred
to decide the exact point against him. *Johnson v. Offutt,*
4 Met. [Ky.], 19, is declared in plaintiff in error's reply
brief to involve "nothing but whether the constitution

prevents any suit anywhere against a member of the legislature." But as we read the case it involves an additional point, and that the precise one which plaintiff in error urges here. The defendant in that case was served in Franklin county, wherein is situated Frankfort, the seat of government, and defendant, in the language of the opinion, "moved to quash the service of summons, upon proof that he was a citizen and resident of Scott county, and representing that county as a member of the house of representatives when the suit was brought, and the summons served and at the time of said motion, and that the legislature was then in session." This was the identical course pursued by plaintiff in error in the case before us, except that he could not show, as did the defendant in the case cited, that the legislature was in session at the time of the service. The overruling of his motion seems to us to determine the question which plaintiff in error raises here. Again, in *Rhodes v. Walsh*, 55 Minn., 542, the defendants were members of the legislature from various counties in Minnesota. The action was brought against them at St. Paul, in Ramsey county, during the session of the legislature, and each defendant sought to quash the service. It is true that it does not appear that any of these defendants conceded that they might have been served in their home counties, but there was quite as much room for the contention as exists here, and if there had been any support in the authorities for such a distinction, it seems not a little singular that the point was not suggested either in argument or opinion.

In all our search we have found but one jurisdiction where the precise rule contended for by plaintiff in error obtains, and that is in Ohio, where it exists by virtue of the following section of the Code: "A member of the senate or house of representatives, or an officer of either branch of the general assembly, shall be privileged from answering to any suit which may be instituted against him in a county other than the one in which he resides, upon a cause of action which accrued ten days before the first

day of the session of the general assembly of which he is
an officer or a member; and all proceedings in actions to
which any such person is a party shall be stayed during
such session, and during the time necessarily employed in
going thereto and returning therefrom." Bates, Annotated
Revised Statutes of Ohio, sec. 5031. In pursuance of an
earlier but similar statute, one of the nisi-prius courts of
Ohio held, in *Orth v. McCook,* 2 Ohio Dec., 624, 4 West.
Law Month., 215, that a member of the legislature could
not be served at the seat of government, even though
joined with other defendants who were served at their
homes. As our own Code was borrowed from Ohio, the
omission of the section above quoted seems doubly sig-
nificant. We can not here establish by judicial decision a
rule which appears to have required legislative enactment
in Ohio, especially when our own legislature has failed to
adopt it.

But it is urged in plaintiff in error's briefs that the
exemption of legislators rests upon grounds analogous to
those which afford immunity to witnesses and suitors
while in attendance upon judicial proceedings, and that
considerations of public policy require us to adopt the
same rule as to legislators. The immunity of witnesses in
such cases is, in this state, expressly provided by statute.
Code of Civil Procedure, sec. 363. So the immunity of suit-
ors constitutes an ancient and well-recognized rule of the
common law. In *Cole v. Hawkins,* 2 Strange [Eng.], 1094,
decided in 1738, it was held to be contempt to serve a suitor
with process while he was in attendance upon a cause, and
the court said: "The privilege was designed   *   *   *   to
prevent any interruption of the business of the court." This
is probably not the earliest case on the subject but it illus-
trates the antiquity of the rule, which appears to prevail
in all jurisdictions where the common law is in force.
See *Palmer v. Rowan,* 21 Nebr., 452. But the doctrine has
never, so far as we are able to find, been extended to legis-
lators. Even in the two jurisdictions where the immunity
of legislators from the service of summons has been de-

clared, it rests upon grounds entirely different from their supposed analogy to parties and witnesses. Indeed, while we are cited to *Jacobson v. Hosmer*, 76 Mich., 234, on the point that a party has a right to be sued at his own domicile, if we were to adopt strictly the Michigan rule and construe plaintiff in error's rights according to the analogy of parties, we would be obliged to hold that he was not in any event exempt from service while merely waiting for the legislative session to begin; for in that state a party is amenable to service while waiting for his case to be called. *Case v. Rorabacher*, 15 Mich., 537. Moreover, if we were, by judicial legislation, to extend to senators and representatives that exemption from the service of summons which is enjoyed by parties and witnesses, we would be logically bound by the same reasons and arguments to extend it also to the executive branch. In this state that department consists of eight officers (Constitution, art. 5, sec. 1), who remain at the seat of government at least two, and often four, years. Are we to hold, then, that each of these officials is exempt from the service of summons in the county where he is usually found during all of this period? And if we extend the doctrine at all, why should we stop with state officers? Why do not the arguments made as to legislators apply with equal force to local executive officers, like sheriffs? Are not such officials entitled, to the same extent as members of the legislature, to immunity from civil process while attending to the public business outside of their own counties?

We do not say that it would not be desirable to adopt such a rule for all public servants. We are simply pointing out that no such rule exists, either at common law or by statute. But it may well be doubted whether the halfway doctrine contended for by plaintiff in error would at all meet the objection urged against the policy of allowing service upon legislators during the session. The objection usually made is that it diverts the attention of the member from legislative business to private matters. And this would be equally true if service were allowed at home.

Berlet v. Weary.

Indeed, the distraction would seem to be less in the case of an action pending at the seat of government where the member could give it some attention without necessarily absenting himself from the legislative session. And, as was well said in *Catlett v. Morton*, 4 Litt. [Ky.], 122, 124: "It has been argued that considerable inconvenience might result from this doctrine to the members of the general assembly, because thereby they might be compelled to litigate their controversies at the capital, instead of in their proper counties. It may be replied, that every citizen who visits Frankfort, and all the other officers of government who do not reside here, are liable to the same inconvenience."

But, if the legislature deems it for the best interests of the state to exempt its members from the service of summons at the seat of government during its sessions, the remedy is entirely in its hands. It may enact into law the rule contended for by plaintiff in error without the aid or consent of either of the co-ordinate branches of the government, and its action in this regard would be legitimate and proper. But for us to announce that rule in advance of such action, and in the face of the authorities above reviewed, would, it seems to us, be little short of revolutionary. We therefore recommend that the judgment be affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

NOTE.—*Constitution—Privilege—Dubois Case.*—In *Greenleaf v. People's Bank*, 133 N. Car. (1903), 292, 300, Chief Justice Walter Clark, discussing a question similar to that involved in the principal case, says: "The numerous and uniform authorities that such privilege from arrest does not exempt from service of process without arrest are collected in a very recent and able opinion (1903) in *Berlet v. Weary* [Nebr.], 60 L. R. A., 609."

The state constitution provides: "Members of the legislature in

all cases except treason, felony or breach of the peace, shall be privileged from arrest during the session of the legislature, and for fifteen days next before the commencement and after the termination thereof." Art. 3, sec. 12. MAXWELL, J., in construing the foregoing, said: "A constitution, like a contract or statute, must be construed together and every part thereof given effect if possible. The provision of the constitution is merely a re-enactment of the common law. The privilege of the member is not the privilege of the house merely, but of the people, and is conferred to enable him to discharge the trust confided to him by his constituents. In other words, the privilege is conferred to enable the member to discharge his legislative duties. Where, however, the constitution has imposed on the member purely ministerial duties, this exemption does not apply. These duties are to be performed at the beginning of the session, so that the parties elected may enter upon the duties of their respective offices and the people have the benefit of their services. The presumption is that the legislature will perform its duty, and declare the result.* But suppose, through a mistake of the law, it should not perform its duty in that regard; is there no remedy either on behalf of the persons elected to office or of the public? If not, then the boast of the common law that here is no wrong without a remedy is without foundation." *State v. Elder*, 31 Nebr., 169, 184.

See the comments of Frank N. Prout, attorney general, upon this case, in the 64th Nebraska Reports, at pages 690 and 691.

In 1856 a case of homicide occurred in the District of Columbia in the presence of the Dutch Minister Dubois. The slayer was indicted. The attorney for the government deemed M. Dubois' testimony necessary for a conviction. The minister was privileged. William L. Marcy, the then secretary of state, requested him to appear at the trial. But, after consultation with the other ministers, Dubois refused to appear. Mr. Marcy thereupon instructed the United States minister at the Hague to bring the matter to the attention of the government of the Netherlands. This having been done, the Holland government declined to authorize M. Dubois to appear as a witness, but consented that he might give an ex-parte declaration under oath, but out of court. M. Dubois then addressed a note to Mr. Marcy offering to make a statement at the Department of State, but refusing to submit to cross-examination. This was, of course, useless and incompetent under the sixth amendment to the constitution of the United States. There is a good and sufficient reason for not subjecting certain public functionaries to the annoyance of judicial process. But the conduct of M. Dubois appears to have been hardly less than outrageous.

Courts will not take judicial notice of the privilege of a member of the legislature. As it may be waived, it must be claimed; and it can only be claimed by plea or motion made or tendered at the proper time. Where a member has allowed a judgment to be ren-

*Of the state election of executive officers.

dered against him during the existence of his privilege, and during the proceeding has sought no abatement or suspension, he can not be allowed the writ of *coram nobis* to reverse such judgment. *Prentis v. Commonwealth*, 5 Randolph [Va.], 697, 16 Am. Dec., 782.

It is not trespass to arrest a person privileged from arrest. 1 Cooley, Constitutional Limitations [6th ed.], 161, note.—W. F. B.