American Industrial Finance Corporation, Appellant, v. David Sholz, Also Known as David Scholz, Appellee.

Gen. No. 37,474.

46

Opinion filed February 1, 1935.

SAMUEL A. & LEONARD B. ETTELSON, of Chicago, for appellant; HERBERT A. SALZMAN, of Chicago, of counsel.

TOWNLEY, WILD, CAMPBELL & CLARK, of Chicago, for appellee; J. ARTHUR MILLER and FRED A. BOWES, both of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued defendant upon a promissory note alleged to have been executed by defendant, payable to the order of Isaac Marks and by the latter indorsed to plaintiff. The statement of claim alleges that defendant failed to pay the note at its maturity. He was duly served with summons and on the return day filed a special appearance and a plea in abatement. Plaintiff moved to strike the plea from the files. The trial court, after argument, took the motion under advisement. Pending a decision upon the motion, defendant, by leave of court, over the objection of plaintiff, filed certain affidavits in support of his plea. The trial court then overruled plaintiff's motion to strike the plea, dismissed the suit, and entered a judgment for costs against plaintiff. It appeals from the judgment.

Under the then rules of the municipal court of Chicago, the motion to strike acted as a demurrer to defendant's plea. That verified plea reads as follows:

" . . .

"1. That the defendant hereinabove named is designated as David Sholz, also known as David Scholz, and that a writ of summons issued under the seal of this Honorable Court, directing service of the same on 'David Sholz, also known as David Scholz,' whereupon said summons . . . were duly served upon David Sholtz, differing from 'David Sholz' or 'David Scholz' as sued and summoned herein. David Sholtz now appears and moves the Court to quash said summons and declare the service thereof as void for the reason of said variance in the names as designated and shown in the plaintiff's statement of claim herein and the said writ of summons.

"2. As further grounds for the abatement of the above entitled cause, David Sholtz states that he is and has been for the past ten months or more, the duly elected and acting Governor of the State of Florida; . . . that . . . acting in said capacity as Governor he made an official visit to the City of Chicago in Cook County, Illinois, during the period of time when the American Legion was in convention in said City, to-wit, October 2 to 5, 1933; that he appeared before the said American Legion for the purpose of presenting an invitation on behalf of the State of Florida to the American Legion to hold its next convention in . . . Florida; that he was acting for and on behalf of the citizens of . . . Florida in said capacity in presenting the said invitation . . . ; that it was during the period of said time, while he was in attendance at the said . . . Convention in his official capacity as Governor of . . . Florida, that he was served with a writ of summons in the above entitled cause; that he temporarily entered the

State of Illinois in the County of Cook in the performance of a duty of a public nature, serving the public interests of . . . Florida as was incumbent upon him as the Chief Executive of the said State; that therefore, and by reason of the fact that David Sholtz as Governor of the State of Florida was in the County of Cook, State of Illinois, solely in the performance of an official duty, he is immune and exempt from the service of civil process and therefore such service, as was made upon him in the above entitled cause, should be declared void, ineffective, and not such as enables this Court to assume jurisdiction over the person of David Sholtz.

"Wherefore, by reason of the matters and things above alleged, . . . it is respectfully prayed that the plea in abatement filed herein be sustained, and that the above entitled cause be dismissed as to David Sholtz without cost to him.

"David Sholtz,
  "By. Townley, Wild, Campbell & Clark,
                      His Attorneys."

(Here follows the verification, made by one of the attorneys.)   The affidavits filed in support of the plea in abatement, over the objection of plaintiff, were made by defendant, W. V. Knott and R. A. Gray. Defendant states:

"  . . . that he is the Governor of . . . Florida, and resides in . . . Tallahassee in . . . Florida; that his visit to Chicago, Illinois, during the latter part of September and the early part of October, 1933, was in his official capacity as Governor of . . . Florida, for the express purpose of inviting the American Legion to hold its 1934 convention in . . . Florida; that in such official capacity as Governor . . . , your deponent presented in the open convention to the American Legion a warrant of the State of Florida in the sum of Ten Thousand Dollars, which sum . . .

was from the official advertising fund of . . . Florida; that the expenses of your deponent to said 1933 American Legion convention in such official capacity were paid by . . . Florida out of the contingent fund set by . . . Florida for the use of The Governor; your deponent further states that he would not have attended said 1933 American Legion convention, he having never participated in nor attended a national convention of the American Legion before, had it not been in accordance with a resolution of the Legislature signifying its desire to have such convention come to Florida.''

Knott's affidavit states:

'' . . . that he is Treasurer of the State of Florida . . . ; that Honorable David Sholtz, Governor of . . . Florida officially attended the 1933 American Legion convention at Chicago, Illinois, in his capacity as Governor of . . . Florida for the purpose of inviting the American Legion to hold its next convention in . . . Florida; that the expenses for such trip to Chicago were paid by . . . Florida; that as such Treasurer of . . . Florida he knows of his own knowledge that the State of Florida delivered to Honorable David Sholtz, Governor . . . , a warrant in the sum of Ten Thousand Dollars of the funds of the State of Florida for the purpose of making deposit of said sum of money with the American Legion at its 1933 convention.''

Gray's affidavit states:

'' . . . that he is Secretary of State of the State of Florida . . . ; that he has read the affidavit of Honorable David Sholtz, Governor of . . . Florida; that . . . David Sholtz officially attended the 1933 American Legion convention in his official capacity as the Governor of . . . Florida for the express purpose of inviting the American Legion to hold its next convention in . . . Florida; that the ex-

penses for such travel were paid by funds of the State of Florida and that the facts as further set forth in such affidavit of the said Governor . . . are true and correct."

Gray, as secretary of state of Florida, certified to a resolution passed by the Florida legislature extending an invitation to the American Legion to hold its next annual convention in Florida and authorizing the governor of Florida, or, in case of his inability, the secretary of state of Florida, to appear before the national executive committee of the American Legion and present to that body the resolution passed by the legislature and to express to the said committee the hope of the people of Florida that the national convention of the American Legion for 1934, be held in Florida.

Defendant concedes, in his brief, "that Governor Sholtz was not in this jurisdiction as a witness, judge, lawyer or litigant (in any pending lawsuit in this city) at the time of service of summons upon him; . . . that he was not brought into this jurisdiction by trick, fraud or artifice practiced upon him by the plaintiff for the purpose of obtaining service of process. Moreover, we admit that Governor Sholtz is not identified with the Legislature," but claim that he, as "Governor of the State of Florida, is entitled to privilege, immunity and exemption from service of civil process while within a foreign jurisdiction in an official capacity in attendance upon public duties." Defendant contends that immunity from service of civil process is not limited to the judicial and legislative branches of government but is also extended to the executive branch of government. He states that cases that extend immunity to the executive branch of the government are rare because proceedings involving the executive branch very infrequently arise.

In *Lamb v. Schmitt*, 285 U. S. 222, 225–6, the court states:

"The general rule that witnesses, suitors, and their attorneys, while in attendance in connection with the conduct of one suit are immune from service of `process in another, is founded, not upon the convenience of the individuals, but of the court itself. *Page Co. v. MacDonald*, 261 U. S. 446; *Stewart v. Ramsay*, 242 U. S. 128, 130; *Hale v. Wharton*, 73 Fed. 739; *Diamond v. Earle*, 217 Mass. 499, 501, 105 N. E. 363; *Parker v. Marco*, 136 N. Y. 585, 32 N. E. 989. As commonly stated and applied, it proceeds upon the ground that the due administration of justice requires that a court shall not permit interference with the progress of a cause pending before it, by the service of process in other suits, which would prevent, or the fear of which might tend to discourage, the voluntary attendance of those whose presence is necessary or convenient to the judicial administration in the pending litigation. See *Bridges v. Sheldon*, 7 Fed. 17, 43 *et seq.* In *Stewart v. Ramsay*, the court said (p. 130), quoting from *Parker v. Hotchkiss*, Fed. Cas. 10,739:

" 'The privilege which is asserted here is the privilege of the court, rather than of the defendant. It is founded in the necessities of the judicial administration, which would be often embarrassed, and sometimes interrupted, if the suitor might be vexed with process while attending upon the court for the protection of his rights, or the witness while attending to testify.'

"It follows that the privilege should not be enlarged beyond the reason upon which it is founded, and that it should be extended or withheld only as judicial necessities require. See *Brooks v. The State*, 3 Boyce (Del.) 1, 79 Atl. 790; *Netograph Co. v. Scrugham*, 197 N. Y. 377, 90 N. E. 962; *Nichols v. Horton*, 14 Fed. 327; *Iron Dyke Copper Min. Co. v. Iron Dyke*

*R. Co.,* 132 Fed. 208. Limitations of it on this basis have been not infrequently made because the attendance upon the trial of a cause, however vital to the personal interests of those concerned, was not for the purpose of facilitating the progress of the cause (see *Brooks v. State, supra; Vaughn v. Boyd,* 142 Ga. 230, 82 S. E. 576; *Sampson v. Graves,* 208 App. Div. 522, 526, 203 N. Y. S. 729), or because the service was made on one whose attendance was not voluntary, and hence had no tendency to interfere with judicial administration. *Netograph Co. v. Scrugham, supra.''* Many other cases to the same effect might be cited, if it were necessary. It is also the general rule that in the absence of a constitutional. or statutory grant of immunity from the service of civil process, legislators are subject thereto, except where arrest is sought by the process, during their attendance upon legislative sessions, that is, while acting in their official capacities. (See *Berlet v. Weary,* 67 Neb. 75, 93 N. W. 238, wherein many cases bearing upon the subject are cited.) There are decisions which decide, or state as *obiter dicta,* that legislative officers are privileged from the service of all civil process during the sessions of the legislature, but our Supreme Court, in the case of *Phillips v. Browne,* 270 Ill. 450, 455–6, concluded that such cases were against the great weight of authority and held that section 14 of article IV of the Illinois constitution, which provides that ''Senators and Representatives shall, in all cases, except treason, felony or breach of the peace, be privileged from arrest during the session of the General Assembly, and in going to and returning from the same; and for any speech or debate in either House, they shall not be questioned in any other place,'' intended only exemption from arrest with a view to imprisonment, and did not include exemption from service of civil process. In *Long v. Ansell,* 55 Sup. Ct. 21, re-

cently decided by the Supreme Court of the United States, it was held that United States Senator Long, while serving in his official capacity, was not exempt from service of civil process in the District of Columbia under constitutional privilege (Art. I, sec. 6, cl. 1, of the Constitution of the United States) from ''arrest.'' The court calls attention to the fact that many States, in passing upon similar constitutional provisions, have also so held. One of the cases cited by the court is *Phillips v. Browne, supra.* While it was not necessary to a determination of the case, the court, in *Long v. Ansell, supra,* saw fit to reapprove the rule laid down in *Lamb v. Schmitt, supra.* (See also the decision of the Court of Appeals of the District of Columbia in *Long v. Ansell,* 69 F. (2d) 386.)

It is the law of this State that one who voluntarily comes into a county of which he is not a resident for the purpose of taking part in the trial of a case in which he is the plaintiff, is not immune from service of civil process in such county. (See *Sbertoli v. Clark,* 263 Ill. App. 65, wherein the cases bearing upon the subject are reviewed.) This rule of law is important in the determination of the instant case for the reason that it is contrary to the rule that prevails in most of the States and in the federal courts, and it serves to show the general policy of this State as to exemption from the service of civil process.

We will briefly review the cases upon which defendant relies: He states that the trial court was practically governed in its decision by the case of *Filer v. McCornick,* 260 Fed. 309. That case was decided by a district judge. Defendant therein was the president of a national bank, which was a stockholder in a federal reserve bank, and at the urgent request of the governor of the federal reserve bank he attended a conference at the city where it was located, in another State, to consider means of selling government treas-

ury certificates for war purposes, and it was held
that the defendant was engaged in a public service,
and privileged from service of process in such State,
not only during the conference, but during the next
few days, while he was prevented by illness from re-
turning home. The cases cited in support of the rul-
ing (see p. 316) were all held to be against the great
weight of authority by our Supreme court in *Phillips
v. Browne, supra,* and they were also criticized in
*Berlet v. Weary, supra.* From a reading of the deci-
sion in the *Filer* case (p. 317), it seems clear that the
trial judge, in holding as he did, was governed, not so
much by the law as by patriotic fervor, as the World
War was then raging. The opinion states:

"It is not, and certainly may not be, claimed that in
attending that conference he was not performing a
public service of the greatest moment to the govern-
ment and of interest to the country. One cannot read-
ily conceive of a higher duty to their country—except
it be on the battle front—than was being performed
by the members of that conference, when we consider
the urgent and absolute necessities of the government
for means with which to finance the gigantic struggle
in which we were then engaged; money at such a time
may be said to be the lifeblood of a nation."

Defendant also cites the case of *The Roseric,* 254 Fed.
154, but admits that the facts of that case are not at
all similar to the facts in the instant case. The *Roseric*
case was decided by a *nisi prius* federal judge. The
case involved a libel against the steamship Roseric,
which had been impressed into the service of the Brit-
ish navy as an ammunition carrier, and while acting as
a British warship during the World War it collided
with a barge in New York harbor, causing damage
which brought about the action in question. During
the hearing of the cause counsel for the British em-
bassy appeared as *amici curiae,* by leave of court, and
suggested that any interruption of the voyage of the

vessel by arrest or other process would interfere with the government business upon which the vessel was engaged, and thereby with the efficient prosecution of the war, and that the court should not exercise jurisdiction over a vessel in the service of a cobelligerent foreign government, as the British courts had refused to exercise jurisdiction over vessels in government service, whether of the British government or of the allied governments, and by comity the courts of the United States should also decline to exercise jurisdiction over vessels in the service of the British government. The decision is not an authority in support of defendant's position. Defendant also cites the following from Foster Fed. Prac. (5th ed.) sec. 167:

"A similar exemption *would probably* be applied to any person while temporarily within the district in the discharge of a public duty." (Italics ours.) In support of this statement the author cites *Lyell v. Goodwin,* 4 McLean 29; *Nichols v. Horton,* 14 Fed. 327; and *Fitzhugh v. Reid,* 252 Fed. 234. The *Lyell* case decides that a judge, while his court is in session and while going to and from his court, is exempt from the service of civil process. The *Nichols* case holds that a nonresident witness is not exempt from the service of civil process in a case, the cause of action of which arose out of acts committed by the nonresident witness while in the foreign jurisdiction for the purpose of testifying. The *Fitzhugh* case states:

"*It will be assumed, without deciding,* that the official position of the defendant, mediator in labor disputes, entitles him to the same privilege of exemption from service in a civil action, while away from his home in the performance of his official duties, as litigants and witnesses in foreign courts, legislators, or judges." (Italics ours.) After giving the defendant the benefit of the strongest case which could be urged in his behalf, the court held that he was not entitled to any exemption while

he was in the jurisdiction in which he was served with summons, as he was not engaged in public business. Defendant also cites certain language from Bowers on Process and Service, sec. 367, but the author cites no authorities in support of his text. While defendant does not appear to rely upon the case of *Zimmerman v. Buffington,* 121 Neb. 670, 238 N. W. 115, we will briefly refer to it. The Supreme Court of Nebraska held that a Kansas officer, while acting under a requisition for extradition of an alleged fugitive from justice, was exempt from service of civil process while coming to, returning from, and attending upon the governor of Nebraska in his line of duty. After a careful reading of the decision we are of the opinion that the court did not intend to change or modify its ruling in *Berlet v. Weary, supra,* and that its decision was based upon the theory that extradition relates to the due administration of justice and that the rule of exemption in favor of suitors and witnesses should apply to the accredited agent of a sister State. The court calls attention to the fact that it is only a judicial proceeding that can call into action the interstate extradition laws.

From a review of the cases it appears that in many of the States of the Union and in the federal courts a more liberal rule of the doctrine of exemption is followed than prevails in this State. But even in the courts which follow the liberal rule the doctrine of exemption from service of civil process is limited to nonresident parties, witnesses, judges, attorneys and other persons connected with the administration of justice. It is hardly necessary to state that we cannot be in any way influenced in our decision by defendant's argument that it is unfair to the governor of a sister State to cause him the annoyance and expense of defending an action in a court located hundreds of miles from his place of residence.

After a very careful consideration of the major question involved in this appeal, we have reached the conclusion that the trial court erred in failing to sustain plaintiff's motion to strike defendant's plea in abatement. In view of this conclusion it is unnecessary for us to consider other points strenuously urged by plaintiff. We may say, however, that there is force in plaintiff's contention that if it could be assumed that the law would exempt a governor of a sister State from the service of civil process if he entered the State of Illinois on purely public business to which a public interest attached, nevertheless, under the record in this case, the defendant would not be immune from the service of civil process. We take judicial notice that the American Legion is an organization of World War veterans, and we feel that its members are entitled to the gratitude and respect of all patriotic citizens. Nevertheless, we cannot hold that its convention bears any official relation to the government of the United States or the State of Florida, and we are of the opinion that plaintiff is justified in arguing that defendant, in attending the convention, was not acting in a governmental capacity. To show the consequences that would logically follow the sustaining of defendant's plea, his counsel, in the oral argument, was compelled to contend that if the legislature of Florida had authorized defendant, as governor of the State, to appear in Chicago and secure for the State a very prominent prize fight or football game and that the defendant was present in Chicago solely by reason of the action of the State legislature, he would be immune from service while performing the duties authorized by the legislature.

Defendant has here abandoned that part of its plea in abatement in which it alleged a variance ''in the names as designated and shown in the plaintiff's

statement of claim herein and the said writ of summons.''

The judgment of the municipal court of Chicago is reversed and the cause is remanded with directions to the trial court to strike defendant's plea in abatement from the files, and for further proceedings not inconsistent with this opinion.

*Reversed and remanded with directions.*

GRIDLEY, P. J., and SULLIVAN, J., concur.