*In re* LITTLE.

CRIMINAL LAW — ARREST BY FEDERAL AUTHORITIES — TRANSFER TO STATE AUTHORITIES.

    A person arrested in another State, charged with a federal crime in Michigan, and brought here to await the action of the federal grand jury, may be turned over to the State authorities to be tried for a violation of our laws, without being allowed time to return to the State where he was originally arrested.[1]

*Habeas corpus* by Philip Little against the sheriff of Montcalm county. Submitted January 28, 1902. Petitioner remanded February 11, 1902.

*Ritchie, Murphy & Phelan,* for petitioner.

*H. E. Chase,* Deputy Attorney General, and *Frank A. Miller,* Prosecuting Attorney, for the people.

GRANT, J. The petitioner is confined in the jail of Montcalm county under a complaint and warrant charging him with the crime of burglary committed in that county. He seeks release upon the writ of *habeas corpus,* for the reason that, at the time of his arrest for this crime, he was confined in the jail of Kent county, Mich., under a warrant issued from the United States court for the Northern district of Ohio, charging him with the crime of robbery of post-offices in Michigan, and under the order of the United States court in Ohio removing him to the United States court for the Western district of Michigan, to await the action of the grand jury upon said alleged offense. The marshal of the United States court for the

---

    [1] As to right to try prisoner arrested in foreign State for other crime than that for which he was surrendered, see note to *Ex parte McKnight,* (Ohio) 14 L. R. A. 128.

    As to service of process on fugitive in custody, see note to *White* v. *Underwood,* (N. C.) 46 L. R. A. 711.

Western district of Michigan, upon the request of the sheriff of Montcalm county, and the presentation to him of the warrant for the petitioner's arrest, surrendered him to the jurisdiction of the State courts for examination and trial. His counsel insist that, upon his release by the United States marshal, he was entitled to return to the State of Ohio, whence he was brought under the order and judgment of the federal court; that he was by law entitled to a reasonable time and opportunity to return, and was, during that time, privileged from arrest by the authorities of the State court.

Courts have shown no inclination to scrutinize too closely the means used by police officers to secure fugitives from justice, and bring them before the courts for trial. It has been repeatedly held that, when alleged criminals are brought by force or by false representation, or even by abuse of process, from one jurisdiction, to which they have fled, into another, they are not entitled to return to the jurisdiction whence they were taken. *In re Mahon,* 34 Fed. 525, 528; *Lascelles* v. *Georgia,* 148 U. S. 537, 543 (13 Sup. Ct. 687), and authorities there cited. The prisoner, upon being discharged by the United States authorities, would not be entitled to return to Ohio, even if he had been extradited. It is just to counsel to say that they do not intend to carry their argument to this extent. If extradited for larceny, and discharged, and a charge of murder had been lodged against him, he would not be absolutely released, and given the opportunity to escape trial upon the more heinous offense. What counsel mean to say is this: That the United States marshal would take him back to Ohio, and there retain him until the necessary papers could be obtained from the governor of Michigan for his return to this State to be tried. This would be an idle ceremony.

No question of treaty stipulation is involved. Petitioner has not been extradited. He was brought to this State under a United States warrant, arrested in one jurisdiction, where the crime was not committed, and transferred

to another jurisdiction, where the crime was committed, for appropriate action.   But, if the case were to be disposed of upon the rules governing extradition proceedings, the controversy has been settled by *Lascelles* v. *Georgia*, *supra*.   This is a federal question, and the decision there made is binding, no matter what the previous decisions of this court may have been.   Before the decision of that case the authorities had been divided, though we think the clear weight of authority was against the contention on behalf of petitioner.   It was there expressly decided that:

"A fugitive from justice, surrendered by one State upon the demand of another, is not protected from prosecution for offenses other than that for which he was rendered up, but may, after being restored to the demanding State, be lawfully tried and punished for any and all crimes committed within its territorial jurisdiction, either before or after extradition."

Counsel for the prisoner rely upon *In re Cannon*, 47 Mich. 481 (11 N. W. 280).   Cannon was extradited as a fugitive from justice for a crime which was the proper subject of extradition.   Upon being brought within the jurisdiction of Michigan he was at once discharged, and proceedings for bastardy commenced against him, growing out of the same facts as those involved in the criminal charge.   The court held (citing authorities) that bastardy proceedings were not criminal, but civil.   The rule is universal that one is privileged from arrest on civil process when he is brought into another jurisdiction, either as a witness or litigant, in obedience to the process of the court. The law gives him sufficient time to withdraw from the jurisdiction into which he is thus forced to come, before he is subject to civil process.   Only when he voluntarily enters within the jurisdiction of that court, or remains after he has had sufficient time to depart therefrom, can he be made the subject of civil process.   In civil suits the defendant is entitled by law to be sued within the jurisdiction of his domicile, unless by his own act he places himself within the jurisdiction of the domicile of his adversary.

This is not the rule, however, in criminal cases, which must be tried within the county and State where the crime is committed. Due protection to society against criminals forbids that they should be thus privileged from arrest for crimes, and opportunity given them to escape. A criminal acquires no right of asylum in a State to which he has fled. The court in *Re Cannon* were not discussing a case involving a criminal arrest, but only an arrest upon civil process. This is equally true of *People, ex rel. Watson,* v. *Judge of Superior Court of Detroit,* 40 Mich. 729, cited in the opinion in *Cannon's Case.* The language used in each case was entirely applicable to the facts, and, if anything was said which can be construed into applying to arrests for crime, it must be regarded as *dictum.* The decision in that case would undoubtedly have been the same if the case of *Lascelles* v. *Georgia* had been decided. Some of the language might possibly have been modified, or not used at all. This being a federal question, as above stated, and no such question being in fact involved in *Cannon's* and *Watson's Cases,* we feel compelled to follow the decision of the Supreme Court of the United States.

The prisoner is therefore remanded.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG, J., did not sit.