## CHANLER v. SHERMAN.

(Circuit Court of Appeals, Second Circuit. May 11, 1908.)

No. 201.

1. COURTS—FEDERAL COURTS—ARREST—SEIZURE UNDER POLICE POWER WITHOUT WARRANT—POWER OF COURT TO PROTECT LITIGANT.

A federal court has power to protect a litigant therein from seizure of his person by the authorities of a state while in attendance upon the trial of his case, whether upon process or in the exercise of the police power of the state without process, where necessary for the protection of its own jurisdiction, and where the threatened act must rest for its justification upon a proceeding the validity of which is the very matter it is called upon to determine.

2. SAME—PROTECTION OF PARTY FROM ACTION OF STATE AUTHORITIES.

Petitioner was adjudged insane by a justice of the Supreme Court of New York, and committed to an asylum, from which he subsequently escaped and went to Virginia. On his application he was adjudged sane by a court of that state, and thereafter instituted an action for conversion in a federal court in New York against his committee appointed by a court of that state on an adjudication of insanity against him, and who had taken possession of his property in that state. In his complaint he alleged that he was a citizen of Virginia, set up the judgment of its court declaring him sane, and alleged that the judgments and orders of the New York courts were void for want of jurisdiction. *Held* that, on the allegations of his complaint, he had the constitutional right to maintain such action in the federal court, which right that court was bound to protect; that it appearing that his presence in that court was necessary for the trial of the issues joined therein, but that, if found in New York, he was subject under its laws to be apprehended and retaken to the asylum without further court proceedings, the federal court had power to grant him a writ of protection which should entitle him to come to that state, to remain during the trial, and to depart therefrom in the custody and under the protection of the United States marshal and without interference with his personal liberty by the officers or agents of the state.

In Error to the Circuit Court of the United States for the Southern District of New York.

W. D. Reed, for plaintiff in error.

Evarts, Choate & Sherman (J. H. Choate, Jr., and George L. Kobbe, of counsel), for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. This appeal is from the denial of a petition for an auxiliary order, in the nature of a writ of protection, in an action at law for conversion.

The situation as disclosed by the record in the action and by the affidavits upon the petition may be thus briefly stated:

(1) In 1897 the petitioner—being the plaintiff in said action—was adjudged insane by a justice of the Supreme Court of New York, and ordered committed to the Bloomingdale Asylum, an institution for the custody of the insane, to which he was duly taken and from which he escaped in 1900 and went to Virginia.

(2) In 1899 an order was made by the Supreme Court of New York finding that the petitioner was of unsound mind, and appointing a committee of his person and property, which office is now held by the defendant in said action.

(3) In 1901 upon an application made to the county court of Albemarle county, Va., where the petitioner then resided, alleging that he had previously been adjudged insane in New York and praying for an examination as to his then condition, said court found that he was sane and capable of managing his affairs.

(4) In 1904 the petitioner brought this action in the Circuit Court as a citizen of Virginia, averring that he was sane and had so been declared by the Virginia court and that said orders of the Supreme Court of New York and of the justice thereof were void for want of jurisdiction, and demanding damages from the defendant upon the theory that he had converted the property of the petitioner in his hands as committee.

(5) The defendant in his answer, not only relied upon said New York orders, but went further, and alleged that the plaintiff—the petitioner—was and had been in fact insane, and that the judgment of the Virginia Court was collusive and void.

(6) The time for the trial of said action approaching, the plaintiff filed the present petition, stating that his presence as a witness at the trial was imperatively required, but that, in case he returned to New York, he was threatened with reincarceration in the asylum, notwithstanding the Virginia decree. He, therefore, prayed for an order protecting him while coming into the state of New York, attending the trial and returning.

It is apparent from the record that, upon the issues as they stand, the attendance of the petitioner at the trial is necessary. His case cannot be presented without him. And it is also most probable that, if the petitioner return to New York without protection, he will be apprehended and retaken to the asylum as an escaped patient. Without relief he is in this predicament. He must abandon his action for the recovery of a quarter of a million dollars in order to retain his freedom, or must abandon his liberty in order to try his case.

The Constitution of the United States vests in its judicial department jurisdiction over controversies between citizens of different states. The petitioner, as a citizen of the state of Virginia, in bringing his suit in the Circuit Court of the United States, was availing himself of a right founded upon this constitutional provision. And he came into that court with a decree of the court of the state of which he was a citizen declaring his sanity. We cannot disregard that decree. In considering it we do not ignore the orders of the courts of New York. Insanity is not necessarily permanent. For the purposes of this petition —laying aside jurisdictional questions—we may properly consider that the petitioner was insane when so declared in New York, but that he had recovered his sanity when he was declared sane in Virginia.

The question, then, is whether a Circuit Court of the United States has power to protect a person in the situation of the petitioner while attending the trial of his cause therein. It is objected at the outset that the Circuit Court has no power to grant a protective order because it would have the effect of restraining proceedings in a state court. Section 720 of the Revised Statutes prohibits the granting of writs of injunction to stay proceedings in any court of a state except when authorized in bankruptcy proceedings. But, assuming that the order

at present prayed for would have injunctive effect, our attention has been directed to no proceedings pending in a state court which it would stay. It appears that 10 years ago a judge of a state court signed an order committing the petitioner to an asylum, and that the order was complied with. It does not appear that those proceedings are still pending, or that resort to them would be necessary to recommit the petitioner to the asylum. The statutes of New York apparently provide that patients escaping from insane hospitals may be retaken by peace officers and by designated hospital attendants. No proceedings in court seem necessary or to be provided for. The only other proceedings in New York—those in which a committee was appointed—if still regarded as pending would not be stayed by a protective order because it was not the object of those proceedings to commit the petitioner to an asylum. He was already in one when they were instituted.

The next objection is that the petitioner ought to apply to the courts of the state of New York for the rescission of the orders committing him to the asylum and appointing a committee of his person and property. We have not the slightest doubt that full justice would be done the petitioner should he submit himself to the jurisdiction of the state courts. But to assume that he was under any obligation to resort to them is to beg the whole question at issue. To say that the orders in question were valid and must stand until set aside by the tribunals which granted them is to assert that the petitioner has no cause of action in the Circuit Court. But he states a cause of action. He asserts that the orders were wholly void for want of jurisdiction. And, if they were void, they were of no effect, and the petitioner had a right to assert their invalidity in any court.

We now come to the broad question of the power of the Circuit Court to grant a protective writ. Such writs have been issued since early times to protect witnesses and parties coming from one state into another to attend a trial from arrest and detention upon civil process. It is true that, if the petitioner were retaken as an escaped insane patient, it would not be upon civil process, nor would it be upon criminal process. But whatever the form of the process—if any at all were necessary—the power exercised to retake him would be that of the police. With the exercise of the police power of a state a court of the United States should not lightly interfere. But we have no doubt of its right to interfere when necessary for the efficient exercise of its own jurisdiction and where the threatened act under the police power must rest for its justification upon the validity of the very matter which the court is called upon to determine. The petitioner was given the right under the laws of the United States to try his case in the courts of the United States. He is not permitted to exercise that full right and the court in effect is not permitted to exercise its full jurisdiction, if, while attending the trial and perhaps before he can be heard, he may be seized and taken to an asylum—and so seized for the reason that he had been previously committed under an order which the petitioner in the very case was asserting to be wholly void. Under such extraordinary conditions, we think the Circuit Court had power to grant the protective writ.

Having determined the question of power, we come to the propriety of exercising it. Notwithstanding the fact that the petitioner is at liberty in other states, it is suggested that it would be unsafe for him to be brought to New York. If any danger were to be apprehended, it would furnish a good reason for refusing the writ. There is, however, nothing in the record to indicate the probability of any such danger, and the petitioner's prayer for relief is based upon the express condition that he remain in the custody of United States marshals during his entire sojourn in the state.

For these reasons, we think a writ of protection should issue if the pleadings in the case remain as they are. The defendant joins issue upon the fact of sanity after the New York orders were made, and also sets up that the Virginia decree was obtained by collusion and is void. With respect to these questions the presence of the petitioner upon the trial would be imperatively required. If, however, the defendant as a committee appointed by the Supreme Court of New York, stood squarely upon the decrees of that court as justifying his acts, and asserted that such decrees, while unreversed, constituted a complete defense regardless of the fact whether the petitioner had since recovered his sanity, the question upon the trial in the Circuit Court would simply relate to the validity of those decrees. That question would be principally a question of law. Practically the only facts involved would be as to the notice given the petitioner—if notice be necessary—and perhaps as to his residence. With respect to these questions the proof would necessarily be within narrow limits and the petitioner's testimony if required might be taken by deposition. Upon such issues we think the personal presence of the petitioner not so necessary that he should be granted the extraordinary relief prayed for here.

The order of the Circuit Court is reversed, with costs to the petitioner, and the matter is remanded to that court with instructions, in case the issues remain as at present, to issue a writ of protection to the petitioner prohibiting any person from apprehending or taking him for the purpose of returning him or committing him to an insane asylum while attending the trial of his said action and for such reasonable time before and after the trial as said court may determine is necessary for him to come into the state and return, provided that he shall submit himself during such time to the custody of one or more United States marshals, shall obey their directions, and shall pay the expense of their employment. But that in case all the issues in said action, except with respect to the validity and effect of the said orders of the Supreme Court of New York and of the justice thereof, be eliminated within 60 days, then that said writ of protection do not issue.