KAUFMAN v. GARNER.

(Circuit Court, W. D. Kentucky. November 1, 1909.)

1. COURTS (§ 344*)—FEDERAL COURTS—PROCEDURE—DETERMINATION OF VALIDITY OF PROCESS.

The validity of the service of a summons must be determined by a federal court on general principles of jurisprudence, in the absence of any statute or established judicial rule in the state to render the federal conformity statutes applicable.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 917; Dec. Dig. § 344.*]

2. PROCESS (§ 119*)—VALIDITY OF SERVICE—NONRESIDENT—ATTENDANCE ON CRIMINAL CASE.

Under the rule of a majority of the federal courts, a nonresident, who comes into a state for the sole purpose of appearing before a court in

which he is charged with a crime, in obedience to a recognizance previously given by him, is exempt from service of summons in a civil action while in such attendance, or before he has secured further bail required by the court.

[Ed. Note.—For other cases, see Process, Cent. Dig. § 149; Dec. Dig. § 119.*]

Action by Max Kaufman, administrator of Yetta Kaufman, deceased, against W. S. Garner. On motion by defendant to quash returns on summonses. Motion sustained.

N. L. Goldsmith and Fairleigh, Straus & Fairleigh, for plaintiff.
A. E. Richards and O'Neal & O'Neal, for defendant.

EVANS, District Judge. On July 16, 1909, the plaintiff's intestate and daughter, a child six years of age, was run over and killed by defendant at Tenth and Market streets, in the city of Louisville. On the —————— day of July, 1909, as stated in the plaintiff's petition, he was appointed and qualified as administrator of his child's estate. While the date is left blank in the petition, the pleading seems to have been sworn to on July 17th. It appears from the affidavits filed that a policeman saw the accident and at once arrested the defendant, who was taken before the proper authorities of the city. This was not done at the instigation, nor with the knowledge, of the plaintiff. On the 17th of July the defendant appeared in the police court, and, his case being assigned to July 29th for examination, he was required to and did give bond for his appearance on that day. On July 28th the plaintiff's petition, which, as we have seen, had been verified by the plaintiff's oath on July 17th, was filed in the Jefferson circuit court, and on that day a summons was issued thereon in due form by the clerk, and placed in the hands of the sheriff of Jefferson county for service. On the next day, the defendant being in the courtroom of the police court pursuant to the requirements of his bond, and awaiting the call of his case, was then and there served by the sheriff with process in this case, and that officer made return on the summons as follows:

"Executed July 29, 1909, on W. S. Garner, by delivering to him a copy of the within summons. Chas. L. Scholl, S. J. C., by Matt. Chambers, D. S."

For some reason the plaintiff, on July 29th, had an alias summons in the case issued by the clerk, which was also placed in the hands of the sheriff, and that officer in due form by written indorsement thereon authorized Robert Halley, as special bailiff, to execute the summons. Halley, under oath, made return on the writ in this language:

"Executed the within summons on July 29, 1909, by reading the same to the defendant, W. S. Garner, and attempting to deliver to him a copy of same. The said W. S. Garner refused to permit said copy of said summons to be delivered to him, whereupon I laid said copy of said summons on the floor of the automobile in which said W. S. Garner was then and there seated, and directed his attention to same. The said Garner stated that he would not accept said summons and resisted the service of same."

It appears, and the court finds, that the last service was made after the defendant had been held over by the the police court to answer in

the circuit court on October 29, 1909, and while, with his counsel, he was on his way to find his surety, which he must do in order to give the required bond, and thus be released from potential, if not actual, custody. Upon this occasion his counsel advised him not to receive the summons, and he refused accordingly. It does not appear that plaintiff's attorney, Mr. Goldsmith, appeared in the police court on the 17th; but he did appear therein and assist the proper prosecuting attorney in the examining trial on July 29th, at which time, as we have seen, the defendant was held over to October 29th, to then answer any indictment that might be found against him in the circuit court, which alone, under the Kentucky law, had jurisdiction of the crime of murder or of manslaughter; the police court only having jurisdiction in such cases to discharge, commit, or hold to bail after an examination into the facts. It does not appear that the plaintiff or his attorney in any way procured the coming into Kentucky of the defendant for the purpose of getting service upon him of process in this action.

The defendant, who at all the dates mentioned was, and who continuously for many years before had been, a citizen of the state of Illinois, specially appeared for the purpose in the state court, and upon his petition, which showed him to be a citizen of Illinois and the plaintiff to be a citizen of Kentucky, removed the case to this court. Upon docketing the cause here, he moved the court to quash the returns upon the two summonses, and the motion has been elaborately and ably argued by counsel.

Inasmuch as the defendant was voluntarily in Kentucky when the accident to plaintiff's intestate occurred, if he had been served with process before he left Jefferson county, Ky., the matter might possibly have been easily disposed of; but neither process was so served. Neither summons was executed upon the defendant until he subsequently came back, in pursuance to the stipulations of his bond, to appear in the police court of Louisville on the 29th of July, and then the services were both made before he was finally released from his duty of further attendance upon that court, namely, before he had given the required bail for his appearance in the circuit court on October 29th. It clearly appears that the only purpose of the defendant in coming to Kentucky upon this occasion, and of being here on the 29th of July, was to meet the requirements of his bond to then appear for examination in the police court on the charge of murder, which had been made against him.

The motion of the defendant has raised a very interesting and important question, which the court has very carefully considered.

1. It is urged that this court, upon that question, should be controlled by the rule established by the Court of Appeals of Kentucky, and it is insisted that that rule is that, where a defendant is served with process under such a state of fact as appears in this instance, he is properly before the court by a service which was not made under circumstances that would require it to be set aside. We are quite sure that the Court of Appeals has never established, nor meant to establish, a rule applicable to this case, either by its decisions in Lewis v. Miller, 115

Ky. 623, 74 S. W. 691, and Linn v. Hagan, 87 S. W. 763, 27 Ky. Law Rep. 996, or in any other case. However, without distinguishing those cases in detail, for present purposes we may assume that they establish a definite rule in Kentucky for cases where the person served with process claimed to have come to this state (though without being subpœnaed) to testify in his own case; but does it follow, either that the Court of Appeals would have held that those decisions would embrace a case like this, or that this court is required to enforce in this radically different case any rule announced in them? If the state of Kentucky had enacted any statute providing for the service of process upon persons under circumstances such as this case presents, and the Court of Appeals of the state had interpreted the language of that statute, the federal courts, in cases where the decision was applicable, might be bound to accept that interpretation. Confessedly, the state of Kentucky has enacted no statute which directly or indirectly provides for a case where a person is served with a summons while appearing in and attending upon any court in which he is charged with a criminal offense. Nor do we find that the Court of Appeals of the state has ever passed upon the question involved in this case, and we think it has never done so.

Section 721 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 581) provides that:

"The laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

It can hardly be maintained that this section requires us to apply the rule there prescribed to the decision of this motion. The obvious reason is that there is neither statute nor established judicial rule in Kentucky which applies to a case like this.

Section 914 (page 684), embracing what is called the "Practice Act," is as follows:

"The practice, pleading, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the Circuit and District Courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such Circuit or District Courts are held, any rule of court to the contrary notwithstanding."

The question involved here cannot, we think, be properly held to embrace either the practice, the pleadings, or the forms and modes of proceeding existing at this time in the courts of record of this state, within the meaning of this section. We cannot find that there now exists in this state any statute or established judicial rule applicable to the case of a person accused of a public offense, who, being away from home, is served with process in a civil action while, in obedience either to the process of the court or the requirements of a bail bond, he is attending the court in which the criminal charge against him is pending, for the purpose either of examination or trial, and when his presence in the locality where he is served with process is, as here, altogether for the purpose of obeying the process of the court in the criminal case or meeting the requirements of the bail bond therein.

We therefore conclude that the pending motion must necessarily be determined upon general principles of jurisprudence, and not upon rules of local law, even if the latter were fixed or ascertainable. In cases where we are bound to follow local law, it would only be where there is, in fact, an applicable local law to follow. Unless there is such local law, we are left to ascertain for ourselves the proper rule or the controlling principle upon which a question is to be determined.

2. But when we reach this point our real difficulty begins, for, while the decisions of the courts upon the point at issue have been numerous and various, neither the Supreme Court of the United States nor any Circuit Court of Appeals, so far as we have found, has ever decided the question. In Pennsylvania, in Vermont, and probably in other states, the rule seems to be that, where a person against whom a criminal accusation is pending in another county or state than his own is present in such court in obedience to its process, and is there served with a summons in a civil action there brought, he cannot successfully say that the service was not proper. The reason appears to be, as stated by at least one of the courts, that, as he attends by compulsion in a criminal case, the liability to be served with process in a civil action does not embarrass him. We confess that this reason does not impress us as being particularly forceful in the light of many more recent cases, although it is backed by the authority of so great a name as that of Chief Justice Redfield in Scott v. Curtis, 27 Vt. 762. The reason given in support of this view may smack somewhat of the old notion that a criminal always deserves harsh treatment; but even that idea, if ever justifiable, can only be so after a conviction, and not while the presumption of innocence must be indulged. If, as all the cases seem to agree, the proposition that parties and witnesses, when attending court in a civil action, should be exempt from the service of process in actions against themselves, is based upon considerations alike of public policy and the dignity and independence of the court first acquiring jurisdiction, as well as the idea that such attendance is under compulsion, we think the stress of the reason for such exemption is obviously stronger where the attendance is in a criminal case, in which the compulsion is more peremptory and pronounced than it is in a civil action.

The rule in England is possibly somewhat similar to that in Vermont; but the system of jurisprudence in that country in respect to process and its service formerly was, and now probably is, so different from ours, that English cases have not lent much aid in our investigations.

An examination of numerous cases has led the court to the conclusion that the prevailing rule in the federal courts has been the other way. See, particularly, United States v. Bridgman, Fed. Cas. No. 14,645; Murray v. Wilcox, 122 Iowa, 188, 97 N. W. 1087, 64 L. R. A. 534, 101 Am. St. Rep. 263; Kinne v. Lant (C. C.) 68 Fed. 440; Small v. Montgomery (C. C.) 23 Fed. 708; Hale v. Wharton (C. C.) 73 Fed. 741; Peet v. Fowler (C. C.) 170 Fed. 618; Skinner v. Waite (C. C.) 155 Fed. 828; Morrow v. Dudley (D. C.) 144 Fed. 441.

While in most of the cases we have cited the person served with process was in attendance upon a court in a civil action, either as a liti-

gant or as a witness, yet in those of them where the person was in attendance in a criminal case the same rule was applied, and, as already indicated, we cannot resist the conclusion that the demands of public policy which require the invalidation of a service of process where the case is a civil one are not stronger nor more logical or philosophical than where attendance upon the court is in a criminal case. We confess to the conviction that the general principle upon which both classes of cases must turn is as applicable to the case of a person who is attending a criminal trial as to the case of a person who is attending the trial of a civil action.

It may be that one of the underlying principles for the general rule in either case might be found in the proposition stated in the opinion of the Supreme Court in Re Johnson, 167 U. S., at page 125, 17 Sup. Ct. 737, 42 L. Ed. 103, where Mr. Justice Brown, speaking for the court, said:

"Ever since the case of Ableman v. Booth, 21 How. 506, 16 L. Ed. 169, it has been the settled doctrine of this court that a court having possession of a person or property cannot be deprived of the right to deal with such person or property until its jurisdiction is exhausted, and that no other court has the right to interfere with such custody or possession."

But, without elaboration, we content ourselves with saying we are convinced that the rule has been established by the decisions of the federal tribunals that in a case like this the summons was not served under such circumstances and in such a way as to bind the defendant; and our investigations have persuaded us that the same rule prevails in a large majority of the states of the Union whose courts have passed on the question. Nevertheless, there might be hardship in its application in this instance, particularly if the laws of Illinois fail to permit the enforcement in that state of any rights which arose in Kentucky in favor of the plaintiff as against the defendant, or if those laws would not, upon proper application, enable the administrator of the decedent to sue there by permission of the courts of that state. We apprehend, however, that the laws of Illinois amply provide for the enforcement of the plaintiff's rights in that state.

The injury was inflicted in Kentucky, and most of the witnesses probably reside here. Nevertheless, a defendant is usually entitled to be sued at his place of residence, and this right can only be defeated where the action is purely local, or where service of process can be properly made upon him elsewhere. The hardship of the case upon one side or the other cannot change the grounds of public policy, upon which the courts hold that such service of process as was made in this case cannot be given effect against the protest of the person served. Of course, a person served with process away from his home may waive his objections thereto; but we see no indication in this case that the defendant ever waived any of his rights in the premises. He did not voluntarily place himself within reach of the process of the court here; nor did he, by coming here under compulsion, waive his right to be sued at home.

It results that the motion to quash each of the returns upon the two summonses issued in this case should be sustained.