THE NETOGRAPH MANUFACTURING COMPANY, Respondent, *v.*
GEORGE R. SCRUGHAM, Appellant.

Process — a foreign resident, arrested upon a criminal charge in
this state and released on bail, is not exempt from service of
process in a civil suit.

It is in furtherance of the policy of the law and the due administration of
justice that suitors and witnesses from abroad are privileged from lia-
bility to other criminal and civil prosecution, *eundo, morando, et rede-
undo.*   But persons actually in custody under criminal process are not
exempt from service of process in civil suits.    A person who is charged
with or convicted of crime and is at large on bail, is constructively in
the custody of the law.    Under such circumstances he cannot be said
to be free to come or to go at will, and when he submits himself to the
direction of the courts having cognizance of the charge against him, he
does not act voluntarily, but under compulsion of law, and hence is
not exempt from the service of process when he comes into this state
from another jurisdiction to attend the trial of an indictment against him.
*Netograph Mfg. Co.* v. *Scrugham,* 133 App. Div. 750, affirmed.

(Argued January 4, 1910; decided January 28, 1910.)

APPEAL, by permission, from an order of the Appellate
Divison of the Supreme Court in the first judicial depart-
ment, entered July 13, 1909, which reversed an order of
Special Term granting a motion to set aside the service of a
summons and complaint and denied said motion.

The facts, so far as material, are stated in the opinion.

*Louis Marshall* for appellant. The rule exempting one coming from a foreign state for attendance upon a judicial proceeding in this state from the service of process *eundo, morando, et redeundo,* is applicable alike to criminal and civil actions. (*Mullen* v. *Sanborn,* 25 L. R. A. 721; *Parker* v. *Marco,* 136 N. Y. 585; *Finucane* v. *Warner,* 194 N. Y. 163; *Larned* v. *Griffin,* 12 Fed. Rep. 592; *Person* v. *Grier,* 66 N. Y. 124; *Matthews* v. *Tufts,* 87 N. Y. 568; *Goldsmith* v. *Haskell,* 120 App. Div. 403; *Wilson* v. *Donaldson,* 117 Ind. 356; *Andrews* v. *Lembeck,* 46 Ohio St. 38; *Barber* v. *Knowles,* 77 Ohio St. 81.)

*Walter Jeffreys Carlin* and *Frederick H. Patterson* for respondent. A person under arrest in this state on a criminal charge is not exempt either before or after conviction from service of process in a civil action. (*Williams* v. *Bacon,* 10 Wend. 636; *Slade* v. *Joseph,* 5 Daly, 187; *Sanders* v. *Harris,* 59 Hun, 628; *Bank of Metropolis* v. *White,* 26 Misc. Rep. 504; *Person* v. *Grier,* 66 N. Y. 124; *Matthews* v. *Tufts,* 87 N. Y. 568; *Parker* v. *Marco,* 136 N. Y. 585; *Adriance* v. *Lagrave,* 59 N. Y. 110; *Martin* v. *Woodhall,* 24 J. & S. 439.) The defendant did not come voluntarily into the state, and is, therefore, not immune from civil process in any case. (*Taylor* v. *Taintor,* 83 U. S. 371; *Reese* v. *U. S.,* 9 Wall. 13; *Sherman* v. *Gundlach,* 37 Minn. 118; *Finucane* v. *Warner,* 194 N. Y. 160.)

Werner, J. The defendant, a resident of the state of Ohio, came into this state voluntarily in April, 1907. While here he attended a legislative hearing in the city of Albany. At that time he was arrested on a warrant, issued by a magistrate in the city of New York, charging him with the crime of conspiracy. He was taken to the city of New York, where he gave bail for his appearance pending the examination. The examination resulted in his being held, and he subsequently gave bail to appear and answer the charge in whatever court it might be prosecuted. In June, 1907, an indict-

ment was found against him for conspiracy, and again he gave bail for his appearance at the trial. He returned to Ohio, and when the indictment was brought on for trial in the Court of General Sessions in the city of New York in March, 1909, he appeared and submitted himself to the jurisdiction of the court. His only purpose in coming into this state was to attend his trial upon the charge of conspiracy. A number of days were occupied in the trial, which resulted in the defendant's acquittal late in the afternoon of March 26, 1909. He remained in the city of New York until the following day, partly because he could not get a sleeping car berth on any train leaving the city on the night of his acquittal, and partly for the purpose of consulting his counsel about other indictments against him which had not yet been moved for trial. At about nine o'clock in the morning of the day after the defendant's acquittal he was served at his hotel with the summons and complaint in this action. There is no connection between the criminal charge upon which the defendant was tried and acquitted, and this civil suit for goods sold and delivered, which, for aught that appears, is brought in good faith. The learned court at Special Term held, and we shall assume, that defendant's stay in New York after his acquittal was for a proper purpose and not unreasonable in duration. These are the circumstances which give rise to this controversy in which the learned Appellate Division has certified to us the question: "Is the service of the summons and complaint upon the defendant   *   *   *   George R. Scrugham lawful?"

This question, based upon the undisputed facts of this record, is very narrow, but it relates to a subject which has for centuries engaged the attention of common-law courts under every conceivable variety of circumstances. Volumes of opinions have been written in which one can find all sorts of conflicting decisions and almost any dictum that one may be looking for. The ease with which the writer of an opinion upon even the simplest phase of this subject could drift into a general dissertation upon it is nicely illustrated in the volu-

minous note to *Mullin* v. *Sanborn* (a Maryland case reported in
25 L. R. A. 721), where the industrious author has gathered
the cases from almost every state in the Union and from Eng-
land. For present purposes it is enough to say that from
the earliest times it has been the policy of the common law
that witnesses should be produced for oral examination, and
that parties should have full opportunity to be present and
heard when their cases are tried. It is in furtherance of
that policy and the due administration of justice that suitors
and witnesses from abroad are privileged from liability to
other criminal and civil prosecution, *eundo, morando, et
redeundo.* (Year Book, 13 Henry IV, I. B. Viner's Abr.
"Privilege.") It is not a natural right, but a privilege which
has its origin in the necessity for protecting courts from inter-
ruption and delay, and witnesses or parties from the tempta-
tion to disobey the process of the courts. "It has always
been held to extend to every proceeding of a judicial nature
taken in or emanating from a duly constituted tribunal which
directly relates to the trial of the issues involved. It is not
simply a personal privilege, but it is also the privilege of the
court, and is deemed necessary for the maintenance of its
authority and dignity and in order to promote the due and
efficient administration of justice." (*Parker* v. *Marco*, 136
N. Y. 585, 589, citing *Person* v. *Grier*, 66 N. Y. 124 ; *Mat-
thews* v. *Tufts*, 87 id. 568.) It is not only not a natural right
but it is in derogation of the common natural right which every
creditor has to collect his debt by subjecting his debtor to due
process of law in any jurisdiction where he may find him.
The privilege should, therefore, not be extended beyond the
reason of the rule upon which it is founded. Since the
obvious reason of the rule is to encourage voluntary attend-
ance upon courts and to expedite the administration of justice,
that reason fails when a suitor or witness is brought into the
jurisdiction of a court while under arrest or other compulsion
of law. Such a suitor or witness does nothing to encourage or
promote voluntary submission to judicial proceedings. He
comes because he cannot do otherwise. That seems to be the

basis for the exception to the general rule of privilege which is illustrated in cases where persons are brought into the jurisdiction of a court under extradition from other states or foreign countries. ( *Williams* v. *Bacon*, 10 Wend. 636 ; *Slade* v. *Joseph*, 5 Daly, 187 ; *Adriance* v. *Lagrave*, 59 N. Y. 110 ; *People ex rel. Post* v. *Cross*, 135 N. Y. 536.) The privilege is held not to exist in such cases. From time immemorial it has been the law that persons actually in custody under criminal process are not exempt from service of process in civil suits. · (1 Chitty's Cr. L. 661 ; Foster Cr. L. 61, 62 ; Tidd's Pr. 306 ; 2 Archb. Pr. 122.)

This brings us to the concrete question whether there is any difference, so far as this question of privilege is concerned, between a person actually in custody and one who is at large under bail. The question is not free from difficulty, but we incline to the view that a person who is charged with or convicted of crime and is at large on bail, is constructively in the custody of the law. He is not in actual confinement, it is true, but he is in the custody of his bondsmen, who, by giving bail for him, have been constituted his jailors. " When bail is given, the principal is regarded as delivered into the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge ; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another state ; may arrest him on the Sabbath ; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner." (*Taylor* v. *Taintor*, 83 U. S. 366, 371. See, also, *Reese* v. *U. S.*, 76 U. S. 13, 21.)

This concise and authoritative exposition of the law of bail leaves little to be said as to the status of a principal under a criminal bail bond. For many of the practical affairs of life he is as much at liberty as though he were

not charged with crime. For the purpose of answering the charge, however, he is constructively in the custody of the law. His bailors have the right and power at any moment to become his jailors for the purpose of placing him in actual confinement. Under such circumstances he cannot be said to be free to come at will, and when he submits himself to the directions of the courts having cognizance of the charge against him, he does not act voluntarily, but under compulsion of law. We are aware that this view is apparently at variance with some decisions in other jurisdictions, notably in England, but we think the administration of justice will be best subserved by keeping the rule of privilege within the reason upon which it rests. That reason fails unless the person claiming the privilege is a free moral agent who may come into or depart from the jurisdiction or not as he pleases. Despite the just tendency of courts to extend the rule so far as possible, it must not be carried to the extent of wholly preventing creditors from pursuing their ordinary civil remedies against debtors, and particularly when the latter involve no restraint of the debtor's person. Much might be said as to the propriety or wisdom of permitting a person just released under bail to be at once arrested on other process, as appears from the English cases relied upon by the defendant, but that is not the question before us, and such a discussion could have no application to a case where a person at large on bail is served with a simple summons which imposes no restraint whatever upon his person. His liberty is as great after service as it was before. He is just as free to depart from the jurisdiction as he was to enter it, and under such circumstances none of his rights are invaded.

The order of the Appellate Division should be affirmed, with costs, and the question certified to us answered in the affirmative.

Cullen, Ch. J., Edward T. Bartlett, Vann, Willard Bartlett, Hiscock and Chase, JJ., concur.

Order affirmed.