**UNITED STATES v. CONLEY.**

**CONLEY v. BARNES et al.**

Cr. 18074.

Civ. 7901.

United States District Court
D. Massachusetts.

Oct. 25, 1948.

Cr. No. 18074:

William T. McCarthy, U. S. Atty., and Charles Miller, Asst. U. S. Atty., both of Boston, Mass., for the United States.

Geo. S. McCarthy, of Amarillo, Tex., for defendant, Conley.

Civ. No. 7901:

Sturtevant Burr, of Boston, Mass., for Edmund R. Dewing, Dist. Atty. for the County of Plymouth.

Michael Fredo, Asst. Atty. Gen. and Charles Miller, Asst. U. S. Atty., of Boston, Mass., for Clarence Barnes.

WYZANSKI, District Judge.

The grand jury in the United States District Court for the District of Massachusetts on June 4, 1948, indicted Conley for violation of the Fugitive Felon Act, 48 Stat. 782, as amended by 60 Stat. 789, 18 U.S.C.A. § 408e [now § 1073]. Presentment was made on the charge that "Conley of Amarillo, in the District of Texas * * * did travel in interstate commerce from * * * Massachusetts to * * * Texas, with intent to avoid prosecution for assault with a dangerous weapon upon one Bertha LaCroix, an offense against the laws of the Commonwealth of Massachusetts". [See this Court's Criminal No. 18074.]

Thereafter, the United States District Court for the Northern District of Texas issued a warrant of removal requiring Conley to appear before this Court to stand trial on the indictment. Simultaneously, that Court admitted Conley to bail for appearance in this District. See Federal Rules of Criminal Procedure, Rules 40(b) (3) and 46, 18 U.S.C.A.

Conley alleges that the Attorney General of the Commonwealth of Massachusetts and the District Attorney for the County of Plymouth, Massachusetts in connection with an indictment already returned by a Massachusetts state grand jury charging Conley with violation of the Massachusetts statute respecting assault and battery with a dangerous weapon, Mass.G.L. (Ter.Ed.) c. 265, § 15A, will seek to arrest and try him in the state court either upon Conley's "entering the Commonwealth" or after Conley's acquittal in this Court.

To protect himself against such state prosecution before or after the federal trial Conley first applied to this Court for a writ of protection. He asserts that by virtue of 28 U.S.C.A. § 1651(a) this Court may issue the writ in connection with Criminal No. 18074. Later at the Court's own suggestion, Conley also applied for an injunction against the Massachusetts Attorney General and the Plymouth County District Attorney. This second action appears on the docket as Civil Action No. 7901.

■ Although this Court itself suggested to Conley's counsel that he file the independent suit in equity, now known as C.A. No. 7901, I am persuaded that that suit must be dismissed for lack of jurisdiction. The jurisdiction of federal district courts is, of course, statutory. And there seems to be no statute applicable to this case. Even the diversity jurisdiction provisions of 28 U.S.C.A. § 1332 are of no avail since $3,000 is not involved.

There is no similar jurisdictional difficulty with respect to a writ of protection. Admittedly this Court has jurisdiction to hear the trial of defendant on the indictment returned by the grand jury in what is known as Cr. 18074. And having jurisdiction of the criminal case this Court may issue "writs necessary or appropriate in aid of" that jurisdiction "agreeable to the usages and principles of law." 28 U.S.C.A. § 1651(a). Such auxiliary writs of protection have frequently been issued by this Court [see Benesch v. Foss, D.C.D.Mass., 31 F.2d 118 in addition to the following unreported cases, Eq. 659; Eq. 835; Cr. 438; C.A. 3170] as well as other courts. Chanler v. Sherman, 2 Cir., 162 F. 19, 22 L.R.A.,N.S., 992.

This brings us to inquire what are the usages and principles of law with respect to protecting defendants in criminal cases. When a defendant is compelled to enter a state to answer a charge of violation of federal law, is he entitled to protection from arrest on a charge of another crime committed prior to his entry? A satisfactory answer to that question can be given only by considering it against a broad background.

■ Except in situations covered by statutes and treaties—to which I shall refer later—the general rule is that a party or witness does not have either before or during or after his attendance at any judicial proceeding a personal privilege to avoid service or arrest in connection with any other judicial proceeding. Such privilege as exists belongs not to the individual but to the court. Lamb v. Schmitt, 285 U. S. 222, 225, 52 S.Ct. 317, 76 L.Ed. 720; Long v. Ansell, 293 U.S. 76, 83, 55 S.Ct. 21, 79 L.Ed. 208.

It is sometimes said that the rationale of the privilege is to encourage voluntary attendance of suitors and litigants who might stay away if they feared service of process in other litigation. But while that may be a good reason, it is historically an inaccurate one. The privilege was first granted in England and America to those who came involuntarily in response to subpoenas. See Judge Learned Hand in Dwelle v. Allen, D.C.S.D.N.Y., 193 F. 546, 548. And even today immunity from civil process is often accorded to defendants and witnesses appearing in civil cases in response to subpoenas. See cases collected in Wigmore, Evidence, (3d Ed.) § 2195g.

It is sometimes said that the rationale of the privilege is to prevent an interruption or embarrassment of the judicial proceedings. But there are two reasons why this explanation will not stand. The service of process to attend a second trial neither interrupts or embarrasses the first trial unless the dates of the two proceedings conflict. Moreover, if the purpose of the privilege were to avoid interruption of the first proceeding, then the protection would not extend, as it sometimes does, to the party or witness during his return from court to his home. Cf. Chanler v. Sherman, supra.

Perhaps the best that we can say is that historically the courts, without minutely examining each individual case to see whether a person's attendance was voluntary or whether a particular process issued by another court caused embarrassment, but in order to "conduce to obedience" to compulsory process, see L. Hand, D. J. in

Dwelle v. Allen, D.C.S.D.N.Y., 193 F. 546, 549, to encourage persons to have their private rights judicially enforced, see Chanler v. Sherman, 2 Cir., 162 F. 19, 21, 22 L.R.A.,N.S., 992 and to emphasize the dignity and importance of attendance at court, have protected litigants and witnesses in civil cases from service of process in another civil suit. Stewart v. Ramsay, 242 U.S. 128, 37 S.Ct. 44, 61 L.Ed. 192. Wigmore, Evidence, (3d Ed.) § 2195g. But this doctrine has not been customarily extended to protecting a litigant or witness in a civil suit from service of process in a criminal suit. Schwartz v. Dutro, Mo. Sup., 298 S.W. 769. But see contra the writ in Eq. 835 issued by this court. The public interest in apprehending and prosecuting him for his alleged criminal conduct outweighs the public interests in the dignity of the courts, in conducing to obedience to subpoenas (when attendance is compulsory), in inducing voluntary attendance (when attendance is voluntary), in encouraging vindication of private rights and in preventing the interruption of judicial proceedings (when interruption is actually threatened).

The extent to which protection is available to a witness in criminal cases is much more debatable. Several rules are possible: for example, (1) like the civil witness, the criminal witness, whether voluntary or involuntary, might be exempt from civil process [Dwelle v. Allen, D.C.S.D.N.Y., 193 F. 546, per Learned Hand, D. J.; Kauffman v. Kennedy, C.C.D.Neb., 25 F. 785]; or (2) where the criminal witness is summoned against his will he might be subject to all process [Cf. Netograph Mfg. Co. v. Scrugham, 197 N.Y. 377, 90 N.E. 962, 27 L.R.A.,N.S., 333, 134 Am.St.Rep. 886 (involving a criminal defendant not a mere witness)]; or (3) where the criminal witness is summoned against his will he might be immune from all process, criminal and civil [United States v. Baird, D.C.D. N.J., 85 F. 633]; or (4) where the criminal witness comes voluntarily in a situation where he could not be compelled to come or comes under a special interstate arrangement, he might be immune from arrest or the service of process, civil or criminal, in connection with matters which arose before his entry. Cf. Mass.G.L.(Ter.Ed.) c. 233, § 13C, as added by St.1937, c. 210, § 1. See also Uniform Act to Secure the Attendance of Witnesses from Within or Without a State Criminal Proceeding. It is unnecessary at this time to select one of these four rules or some other rule. Even if—which I do not suggest is so— Judge Kirkpatrick's ruling in the Baird case is correct or even if—as the Uniform Act implies—there is now a recognized public policy in protecting persons who voluntarily or in response to a summons come within the state as witnesses in a criminal trial, that ruling and policy do not purport to extend to persons brought to the state as defendants in criminal cases. The Uniform Act and its local embodiment, Mass.G.L.(Ter.Ed.) c. 233, § 13C, are so drawn as to cover only those who are ordered to come to the state "to attend and testify". A defendant in a federal criminal case is ordered merely to stand trial. He is not and cannot be ordered to testify. United States Constitution Amendment V.

With regard to defendants in criminal cases, the point which has been most frequently raised is whether a non-resident criminal defendant appearing voluntarily or involuntarily is subject to civil process. The authorities are collected in 22 L.R.A., N.S., 992; 14 A.L.R. 771; 40 A.L.R. 93 and 65 A.L.R. 1370. It is customarily said that, while there is a split of authority in the state courts, the federal practice is to accord immunity from civil process. Judge Morton gave such protection in Benesch v. Foss, D.C.D.Mass., 31 F.2d 118. To the same effect are In re Hall, D.C.S.D. N.Y., 296 F. 780 petition dismissed 2 Cir., 2 F.2d 1016; Church v. Church, 50 App. D.C. 239, 270 F. 361, 14 A.L.R. 769; Kaufman v. Garner, C.C.W.D.Ky., 173 F. 550 and United States v. Bridgman, C.C.E.D. Wis., Fed.Cas.No. 14,645. However, there is some reason to doubt whether the Supreme Court of the United States would follow the lower federal courts in granting a criminal defendant immunity from even civil process. See Stone J.'s approving citation of Netograph Mfg. Co. v. Scrugham, 197 N.Y. 377, 90 N.E. 962, 27 L.R.A., N.S., 333, 134 Am.St.Rep. 886 in Lamb v.

Schmitt, 285 U.S. 222, 226 lines 4–8, 52 S. Ct. 317, 76 L.Ed. 720. But observe L. Hand D. J.'s analysis of the same New York case in Dwelle v. Allen, D.C.S.D.N.Y., 193 F. 546, 547, 548. That Court might conclude that neither the dignity of attendance upon a federal court, or the desire to conduce a criminal defendant to obedience, or the purpose of encouraging a criminal defendant to vindicate himself, or the policy of not interfering with or embarrassing federal court proceedings required the allowance of any such protection against civil litigation.

■ Regardless of the appropriate rule for the protection of criminal defendants against civil process, I am clear that a defendant in a criminal case is not ordinarily entitled to protection against the service of process in another criminal case. (Except in extradition cases, to which I shall refer later,) no authority according such protection has been cited to, or found by me. Whether a person comes into the state voluntarily, or on bail, or in custody to answer one criminal charge, he ought to be subject to service of process on charges of other crimes committed before or after his entry. The overriding public policy is to require him to answer and stand trial for every duly presented accusation of violation of law. Cf. Mahon v. Justice, 127 U.S. 700, 712, 8 S.Ct. 1204, 32 L.Ed. 283. Compared with that policy, the dignity of attendance upon the first court, the desire to stimulate obedience to its process and the desire to encourage defendants to clear themselves of the charge first brought against them are of secondary importance. Of course, in so ruling I do not imply that the first court is without power, or should fail to exercise power, to prevent any other court or any court officer or prosecutor from requiring the presence of the defendant at the particular time and place when he is summoned to appear at the first court. A court undoubtedly would protect a criminal defendant from any arrest which would incapacitate him, and not merely discourage him, from attendance at the first court at the due time and place. But in the case at bar it was admitted by counsel in argument (despite the contrary allegations of the pleading) that the Massachusetts authorities would not seek to lay hands on Conley until after his trial in this Court.

The conclusion which I have reached is in accord with In re Little, 129 Mich. 454, 89 N.W. 38, 57 L.R.A. 295 and Gaines v. State, 95 Tex.Cr.R. 368, 251 S.W. 245, appeal dismissed 263 U.S. 728, 44 S.Ct. 132, 68 L.Ed. 528. It is also in accord with the rule applied to criminal defendants who, pursuant to United States Constitution Article IV, § 1, have been delivered by the authorities of one state to authorities of another state. In such cases of interstate rendition the defendant may be served with criminal process in any criminal case, not only the one for which he was removed. Lascelles v. Georgia, 148 U.S. 537, 13 S.Ct. 687, 37 L. Ed. 549. See accord Mass.G.L.(Ter.Ed.) c. 276, § 20O, as added by St.1937, c. 304, § 1. [The narrower rule, illustrated by United States v. Rauscher, 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425, which sometimes governs persons extradited from a foreign country to the United States, is explicable in terms of the particular treaties involved —treaties which impose contractual conditions upon the receiving state.] Another pertinent supporting analogy is furnished by the rule that a defendant removed from one federal district to another to stand trial on one charge may while there be served with process on a second federal criminal charge. Cardigan v. Biddle, 8 Cir., 10 F.2d 444.

■ There remains one point to be noticed. In the discussion so far I have treated this as though it were an ordinary case where a person was being required to come from Texas to Massachusetts to stand trial for violation of one of the usual federal criminal statutes. But in fact this is an a fortiori case, for Conley is required to come here to stand trial for violation of the Fugitive Felon Act and the service he fears is in connection with the very state charge from which it is claimed he is a fugitive. The terms of that statute no less than its legislative history reveal that its purpose was to supplement ineffective interstate rendition proceeding. See United States v. Brandenburg, 3 Cir., 144

F.2d 656, 154 A.L.R. 1160; Hemans v. United States, 6 Cir., 163 F.2d 228, 239. Congress provided not only that an interstate fugitive from state prosecution should be denominated a violator of federal law but that he should be tried only in the state where the original crime was committed. The plain intent was to make it certain not only that he was punished but that he would be subject to service of the state criminal process he had sought to escape. No reasonable court would try a person for evading a state criminal process and simultaneously give him immunity from service of that process.

The petition for a writ of protection is denied on its merits, and the complaint seeking an injunction is dismissed for lack of jurisdiction.