Desmond, J.
The Appellate Division, reversing Special Term on the law, denied defendant’s motion to set aside the service on him of the summons in this case and certified to us a question as to whether defendant was immune from such service at the time it was made.
*498 The facts are all undisputed and aré set oiit in the motion pápérá, the Complaint in this action and in the indictment which is an exhibit thereto. On April 13, 1956 defendant, Who was a citizen and resident Of North Carolina, was (with several others including’ plaintiff Corporation) indicted in the United States District Court for the Southern District of NeW York for allegedly manipulating the accounts of plaintiff Thermoid Company in Order to defraud the Federal Government of taxes. Thermoi'd is a Delaware corporation of Which defendant Fabél had been Until 1955 president and a director and large stockholder. NO warrant Or summons in that criminal causé Was ever served on Fabel who was in North Carolina when indicted. Such a warrant Or summons COuld under subdivision (b) of rule 4Ú Of the Federal Rules of Criminal Procedure have been executed anywhere in the United States and defendant could have been reíñOVed from North Carolina to NeW York. However, nú such proceedings became necessary since four days after indictment Fabél Surrendered to the District Court in New York City, pleaded not guilty, posted '$3,000 bail, then was released and returned to his home in North Carolina. He returned to New York in January, 1957 for the trial of the indictment. OnFebruary 27, 1957, after sveral weeks of trial, be withdrew his former plea and entered a plea of guilty to one count of the indictment and 'holó conléndefe to the others. Bail WdS Continued and Fabel Went hack to North Carolina, returning to NeW York On March 17th ancl remaining there until March 26th, on which daté he was sentenced to pay a $25,000 fine and given á jail 'sentence which was Suspended. As he left the Federal courthouse in New York City after being sentenced, he was served with the Summons and Complaint in 'this civil action brought against him by his corporation. The complaint seeks damages against Fabel becaüse of alleged acts which aré the same, substantially, as those charged in the indictment. Fabel appearing specially then moved to set aside the 'Service On the ground that he was immune from such service.
'Special Term granted the motion and set aside the service, holding that defendant Was entitled to immunity because he had Voluntarily come into the State, remained here and returned here. The Appellate Division, however, was of the opinion that New *499 York State’s public policy in such eases has been set by section 855 of our Code of Criminal Procedure. That statute, adopted in 1936, gives immunity but until conviction only, from service of process in suits arising out of the same facts, to a defendant who has been “ brought into this state on or after waiver of extradition Of course, Fabel was not extradited nor did he waive extradition (“extradition” as referring to removals from one State to another is really unknown in modern Federal criminal procedure) but the Appellate Division thought that Fabel’s situation was so similar to waiver of extradition that it should have the same treatment. On the contrary, we think not only that section 855 has no applicability here but also that since Fabel came into this State voluntarily the settled policies and decisional law of this State clearly gave him immunity from this service.
It is an ancient rule in most States including New York that a suitor in attendance in a court outside the territorial jurisdiction of his residence is immune from service of civil process while attending court and for a reasonable time before and after, that is, going to court and returning to his home (Person v. Grier, 66 N. Y. 124,125-126; Matthews v. Tufts, 87 N. Y. 568, and cases listed therein, at p. 570; Parker v. Marco, 136 N. Y. 585; Chase Nat. Bank v. Turner, 269 N. Y. 397). The purpose of the rule “ is to encourage voluntary attendance upon courts and to expedite the administration of justice ” (Netograph Mfg. Co. v. Scrugham, 197 N. Y. 377, 380). It follows reasonably and logically that there is no such immunity for one who has been “ brought into the jurisdiction of a court while under arrest or other compulsion of law” (Netograph opinion, supra, p. 380). “ Such a suitor or witness does nothing to encourage or promote voluntary submission to judicial proceedings ” (Netograph opinion, supra, p. 380). But neither this exception nor its reason applies to the case of this defendant Fabel who, learning that he had been indicted, traveled up to New York from his North Carolina home without arrest or process or other compulsion. His appearance in New York was in fact and in law voluntary. We should, therefore, on authority and principle, apply to him the immunity privilege and not the exception applicable in cases of compulsion only.
It should be sufficient ground for reversal that this case comes within the spirit and terms of the common-law immunity rule *500 which has existed ££ from the earliest times” and which expresses a “ privilege of the court ” as well as of the defendant (Netograph Mfg. Co. v. Scrugham, 197 N. Y. 377, 380, supra). And comity suggests we should carefully avoid interference with á privilege of the Federal courts (see Powell v. Pangborn, 161 App. Div. 453, 456). But consideration must be given to the Appellate Division’s basis for decision, that is, that section 855 of the New York Code of Criminal Procedure requires or suggests a holding here against immunity. That statute is almost identical with section 25 of the Uniform Criminal Extradition Act now in effect in most of the States. Section 855 reads thus: “ A person brought into this state on or after waiver of extradition based on a criminal charge shall not be subject to service of personal process in civil actions arising out of the same facts as the criminal proceedings to answer which he is being or has been returned until he has been convicted in the criminal proceeding, or if acquitted, until he has had reasonable opportunity to return to the state from which he was extradited. ’ ’ It is impossible, we think, so to read that statute as to make it apply to the facts of this case. It is part of an extensive series of extradition statutes and it has to do with the cases of persons who, after having been extradited or after formally waiving extradition, have been ‘1 brought into ’ ’ this State. Such a person is immune from service of process in a civil case arising out of the same facts as the criminal cause and such immunity ends on conviction, if there be a conviction. However, if there be an acquittal, then immunity continues until the defendant has had a reasonable opportunity to leave this jurisdiction. But, we repeat again, none of this has anything to do with defendant Fabel who was not extradited and did not waive extradition (see Code Crim.' Pro., § 851, as to requirements for waiver) and was not “ brought into this state ” but returned voluntarily and surrendered himself in New York.
The reason and history of section 855 persuades us that no effort should be made to stretch it to cover this case. While taken over from the Uniform Extradition Act it is actually a codification of old New York case law. The denial of immunity from civil process to one brought into this State by compulsion to answer criminal charges was by our decisions made subject to an exception. The exception existed ‘£ where the debtor has *501 been brought into this State, by or through the connivance of the creditor, upon the mere pretext of a criminal charge, in order to subject him here to service of civil process by arrest or otherwise ” (Slade v. Joseph, 5 Daly 187, 190; to the same effect see Williams v. Bacon, 10 Wend. 636; Lucas v. Albee, 1 Denio 666; Browning v. Abrams, 51 How. Prac. 172; Martin v. Woodhall, 24 Jones & Sp. 439). By these decisions our courts, long before there was a Uniform Extradition Act or a section 855, had seen to it that a defendant brought here under criminal process would still have immunity from a civil suit on the same facts if he could show that the criminal arrest had been a mere method of getting him into this State so he could be sued here civilly. Such schemes by creditors were not infrequent and Governors of asylum States were reluctant to sign extradition papers. New York recognized that a statute like section 855 Avould be a better assurance to such Governors than the existence in our books of the court decisions cited above. In recommending to the Legislature in 1935 the enactment (with some changes) of the Uniform Extradition Act, the LaAv Revision Commission pointed to this reason (see 1935 Report of N. Y. Law Rev. Comm., p. 134). The commission put in as an appendix to its report (supra, pp. 155-156) part of a speech made by then Lieutenant Governor Lehman in 1930 in which he explained the purpose of the Uniform Extradition Act to protect innocent persons brought in under criminal process but actually for purpose of civil suit. Section 855 accomplished that purpose by denying immunity to convicted persons. But section 855 and the whole of title IV of part VI of the Code of Criminal Procedure, as Avell as the Avhole of the Law Revision Commission report, in terms dealt with extradition only and in purpose have nothing to do Avith defendants like Fabel who come voluntarily into this State to meet criminal charges here.
We do not think that Fabel’s voluntary return to plead to the indictment became involuntary because he Avas on bail between the time of that plea and the trial (see Kreiger v. Kreiger, 7 Misc 2d 595, affd. 272 App. Div. 880; Bunce v. Humphrey, 214 N. Y. 21).
The order appealed from should be reversed, the certified question answered in the affirmative, and the motion to set aside the service of the summons granted, with costs in this court and in the Appellate Division.
*502 Chief Judge Conway and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Order reversed and matter remitted for further proceedings in accordance with the opinion herein, with costs in this court and in the Appellate Division. Question certified answered in the affirmative.