CHALONER v. NEW YORK EVENING POST CO.

(District Court, S. D. New York. April 28, 1919.)

1. INSANE PERSONS ⬡⟹26—CAPACITY TO SUE—ADJUDICATION OF INCOMPETENCY.

Under Code Civ. Proc. N. Y. § 55, providing that a party may prosecute or defend a civil action, "unless he has been judicially declared incompetent to manage his affairs," the disqualification is not the judicial declaration, but actual mental incapacity, of which the decree is but evidence, and its effect as such may be neutralized by a subsequent adjudication of competency in another state, of which the party was then a resident.

2. INSANE PERSONS ⬡⟹87—CAPACITY TO SUE—CONFLICTING ADJUDICATIONS AS TO COMPETENCY.

A plaintiff held qualified to maintain an action for libel in a federal court in New York, although he had been declared incompetent by a court

of that state and a committee appointed for his property, where at the time of the alleged libel he was a resident of Virginia, where he had been judicially adjudged competent.

At Law. Action by John R. Chaloner against the New York Evening Post Company. On plea of plaintiff's incapacity to sue. Denied.

Frederick A. Ware, of New York City, for plaintiff.

Sherry & Morgan, of New York City, for defendant.

DIETRICH, District Judge. From the complaint, which was filed May 29, 1909, it appears that the alleged defamatory matter was published on March 18, 1909, and impliedly charged the plaintiff with the commission of a felony in the state of Virginia.

After sundry proceedings and numerous delays, an order was made directing that the affirmative defense set up in the answer, to the effect that plaintiff is without capacity to maintain the action, be first tried; and accordingly, a reply having been filed and a trial by jury expressly waived, that issue is now for consideration upon the pleadings, together with documentary evidence, consisting of the records of three judicial proceedings, one had in the state of New York, one in Virginia, and the other in North Carolina.

From the New York record it appears that on June 23, 1899, the plaintiff was by a court of competent jurisdiction adjudged to be of unsound mind, and pursuant to the statutes of the state of New York a committee of his person and property was appointed. This order or decree is still in effect, and the committee so appointed, or his successor in office, still continues to act. Certain details both of the New York proceedings and of the pertinent New York statutes may be supplied by reference to Chaloner v. Sherman, 242 U. S. 455, 37 Sup. Ct. 136, 61 L. Ed. 427.

Closely following the entry of the original order, the plaintiff escaped from the custody of the New York officers, and ever since has resided in Virginia and North Carolina. Soon after he came into Virginia, a citizen of that state instituted a proceeding in the county court of Albemarle county for the purpose of having a judicial inquisition touching his competency to manage his property, and the propriety of his being at large. After a hearing the court found that he was "a sane man, capable of taking care of his person and of managing his estate," and that there was "no occasion for the appointment of a committee of his person and estate," and accordingly, on November 28, 1900, ordered a dismissal of the petition.

Subsequently the question of the plaintiff's competency was incidentally raised in certain litigation in North Carolina to which he was a party, but the proceedings were of such a character that they are not thought to be highly material to the present issue.

Upon this state of facts, has the plaintiff the capacity to maintain this action? It is to be conceded that the competency of parties is a question of procedure, and that the federal courts generally follow the local state practice. Section 914, R. S. U. S. (Comp. St. § 1537); Rose's Code of Federal Procedure, § 902, A.

[1] By section 55 of the New York Code of Civil Procedure, it is provided that—

"A party to a civil action, who is of full age, may prosecute or defend the same in person or by attorney, at his election, unless he has been judicially declared to be incompetent to manage his affairs."

The controlling inquiry, therefore, relates to the meaning and application of this statute. The provision was doubtless intended for the protection of litigants who are in fact mentally incapable of managing their affairs. The gist of the disqualification is not the judicial declaration, but the actual mental incapacity of the litigant. Exclusive and conclusive though it may be, the decree is, after all, but evidence of, and does not constitute, the disqualification. So here, in the absence of countervailing evidence of equal dignity, the New York order should be accepted as controlling, and as conclusively establishing the plaintiff's present mental status. But to meet this situation the plaintiff produces a decree of a Virginia court of competent jurisdiction declaring the plaintiff sane as of a date subsequent to the New York decree.

For the purposes of this suit, therefore, we may properly recognize this later judicial declaration as competent evidence of the plaintiff's mental status, and as neutralizing the probative effect of the New York decree. In this view we do not deny full faith and credit to the New York proceedings, nor do we question the power of the New York court and its officers to execute its orders. The suit in no wise relates to the custody of the plaintiff's person or to property within the jurisdiction and control of the committee.

[2] If, as for present purpose we must assume, the averments of the complaint are true, while the plaintiff was in a jurisdiction in which his competency had been judicially declared, the defendant charged him with the commission of a heinous crime. He exhibits a transitory cause of action accruing to him where and when he was deemed to be sane and competent. Could he have found the defendant in Virginia, his right to maintain the action there would probably have gone unchallenged.

While perhaps, strictly speaking, the consideration is somewhat aside from the question of capacity, if the plaintiff were seeking to vindicate a right relating to property within the custody and control of the committee, the conflict of authority thus presented might give rise to serious complications; but such is not the present case. Upon just what theory the committee could prosecute this suit for the plaintiff is not clear. But, however that may be, in waging the claim in his own right the plaintiff in no wise puts himself in conflict with the New York court or its officers, for, in so far as the record discloses, it is a matter with which they have not concerned themselves.

The precise question has apparently not been passed upon in any of the preliminary proceedings in the case or any related proceedings; but the view here taken seems to have a measure of support in the order made by Judge Coxe overruling the demurrer to the complaint, and in the decision of the Circuit Court of Appeals in Chanler

v. Sherman, 162 Fed. 19, 88 C. C. A. 673, 22 L. R. A. (N. S.) 992, and is not thought to be out of harmony with Chaloner v. Sherman, 242 U. S. 455, 37 Sup. Ct. 136, 61 L. Ed. 427, or Gasquet v. Fenner, 247 U. S. 16, 38 Sup. Ct. 416, 62 L. Ed. 956, the two decisions chiefly relied upon by the defendant.

Accordingly, for the reasons given, the plea will be denied.